[No. C038802. Third Dist. Mar. 25, 2005.]

THE PEOPLE, Plaintiff and Appellant, v.
KEITH ISHMEAL CARMONY, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*The Reporter of Decisions is directed to publish the opinion except for part II of the Discussion.

## COUNSEL

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Assistant Attorney General, Janet E. Neeley, Stephen G. Herndon, Michael P. Farrell, Patrick J. Whalen and Daniel Andrew Eldridge, Deputy Attorneys General, for Plaintiff and Appellant.

Victor S. Haltom, under appointment by the Court of Appeal, for Defendant and Respondent.

Jack Funk, Assistant State Public Defender, and Michael Vitiello for California Public Defenders Association as Amici Curiae on behalf of Defendant and Respondent.

## OPINION

**BLEASE, Acting P. J.**—This case raises the question whether there is an offense so minor that it cannot trigger the imposition of a recidivist penalty without violating the cruel and/or unusual punishment prohibitions of the United States and California Constitutions.

Although defendant had registered his correct address as a sex offender with the police one month before his birthday, as required by law (former Pen. Code, § 290, subd. (a)(1)(A)),[1] he failed to "update" his registration with the same information within five working days of his birthday as also required by law. (Former Pen. Code, § 290, subd. (a)(1)(C).) Defendant's parole agent was aware defendant's registration information had not changed and in fact arrested defendant at the address where he was registered.

Defendant pled guilty to the charge of failing to register within five days of his birthday and admitted he had suffered three prior serious or violent felony

---

[1] Unless otherwise stated, references to former Penal Code section 290 are as it read in 1999. (Stats. 1998, ch. 930, § 1.1.)

convictions (Pen. Code, §§ 667.5, subd. (c) and 1192.7, subd. (c))[2] and had served a prior prison term. (§ 667.5, subd. (b).) The trial court sentenced him under the "Three Strikes" law to a prison term of 25 years to life (§§ 667, subds. (b)–(i), 1170.12) plus a one-year consecutive term for the prior prison term. (§ 667.5, subd. (b).)

In an earlier opinion we held the trial court abused its discretion in refusing to strike two of defendant's three prior convictions. The Supreme Court reversed the decision and remanded the case for our consideration of the constitutional issues not reached in our prior decision.

On appeal, defendant claims the application of the Three Strikes law to the offense of failing to duplicate his registration as a sex offender violates the state and federal prohibitions against cruel and/or unusual punishment, double jeopardy and ex post facto laws, and his federal right to a jury trial under *Blakely v. Washington* (2004) 542 U.S. 296, 301 [159 L.Ed.2d 403, 412, 124 S.Ct. 2531] (*Blakely*).

■ It is a rare case that violates the prohibition against cruel and/or unusual punishment. However, there must be a bottom to that well. If the constitutional prohibition is to have a meaningful application it must prohibit the imposition of a recidivist penalty based on an offense that is no more than a harmless technical violation of a regulatory law.

■ The state and federal prohibitions against cruel and/or unusual punishment require that the sentence be proportionate to the crime. Accordingly, the current offense must bear the weight of the recidivist penalty imposed. Although the Legislature may impose increased penalties on repeat offenders, recidivism remains a factor in aggravation and may not serve as the reason for imposing increased punishment where the predicate offense serves no rational purpose of the state.

The purpose of the sex offender registration law is to require that the offender identify his present address to law enforcement authorities so that he or she is readily available for police surveillance. In this case the defendant did so one month prior to his birthday and was in fact present at his registered address when the arrest for the present violation was made. The stated purpose of the birthday registration requirement was (and still is) to "update" the existing registration information. (Former § 290, subd. (a)(1)(C).)

---

[2] All further section references are to the Penal Code unless otherwise specified.

Here, there was no new information to update and the state was aware of that fact. Accordingly, the requirement that defendant reregister within five days of his birthday served no stated or rational purpose of the registration law and posed no danger or harm to anyone.

██ Because a 25-year recidivist sentence imposed solely for failure to provide duplicate registration information is grossly disproportionate to the offense, shocks the conscience of the court and offends notions of human dignity, it constitutes cruel and unusual punishment under both the state and federal Constitutions. We shall remand the matter to the trial court for resentencing.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

In 1983, defendant was convicted of oral copulation by force or fear, with a minor under the age of 14 years (§ 288a, subd. (c)),[4] giving rise to defendant's lifelong duty to register as a sex offender. (Former § 290, subds. (a), (b) & (e), as amended by Stats. 1979, ch. 944, § 8, pp. 3254–3256.) Defendant failed to comply with the registration requirement in 1990 and again in 1997, when he was sentenced to state prison for 32 months.

Upon his release from prison, defendant reregistered as a sex offender on September 16, 1999. A week later, after moving to a new residence, he registered again on September 23, 1999, to notify authorities of his new address. His birthday is October 22d and his parole officer reminded him he was required to update his registration annually within five working days of his birthday. He received standardized forms to that effect. Nevertheless, he failed to duplicate his registration information and on November 23, 1999, his parole officer arrested him at his registered address for failing to comply with the annual registration requirement.

Defendant had recently married, maintained a residence, participated in Alcoholics Anonymous, sought job training and placement, and was employed. Just prior to the current offense, he worked as a forklift operator for Hartsell Trucking in Redding and was employed by them until November 24, 1999, the day following his arrest for the present offense.[5]

---

[3] We have no occasion to consider the appropriateness of a recidivist penalty where the predicate offense does not involve a duplicate registration.

[4] This conviction arose when defendant, who was intoxicated, became angry with his then girlfriend, and, in retaliation, picked up her nine-year-old daughter from school and sexually assaulted her.

[5] The Supreme Court stated in *People v. Carmony* (2004) 33 Cal.4th 367, 372 [14 Cal.Rptr.3d 880, 92 P.3d 369] that defendant "had obtained a job and performed well, but had *quit after only a short time,*" suggesting that he was still acting irresponsibly. (Italics added.) However, the

Defendant pled guilty to one count of failure to register as a sex offender, a felony (§ 290, subd. (g)(2)), and admitted three prior conviction allegations under the Three Strikes law (§§ 667, subds. (b)–(i), 1170.12) and one prior prison term allegation. (§ 667.5, subd. (b).)

The trial court denied his motion to dismiss the prior conviction allegations under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] and sentenced him to a term of 25 years to life under the Three Strikes law plus an additional one-year term for the prior prison term, for an aggregate term of 26 years to life.

On appeal, defendant argued that the trial court's failure to strike his prior convictions was an abuse of discretion under *People v. Superior Court (Romero), supra,* 13 Cal.4th 497 and that a life sentence violates the cruel and unusual punishment provisions of the state and federal Constitutions. We partially agreed with his *Romero* claim and reversed the judgment and remanded for resentencing.

The California Supreme Court granted the People's petition for review, reversed our ruling after concluding the trial court did not abuse its discretion, and remanded the case for further proceedings consistent with its opinion. (*People v. Carmony, supra,* 33 Cal.4th at p. 380.) In a concurring opinion, Justice Moreno, joined by Justice Chin, cautioned that "[s]ubject to the caveat that the sentence may yet be overturned on constitutional grounds, I reluctantly concur in the majority opinion." (*Id.* at p. 381.)

We directed counsel to brief the constitutional issues left open by the high court's opinion. We now address the dispositive issues.

## DISCUSSION

### I

### Cruel or Unusual Punishment

Defendant contends his life sentence violates the state and federal prohibitions against cruel and/or unusual punishment because it is disproportionate to his current offense.[6]

---

probation report shows that defendant's employment terminated the day after his arrest and that his employer wrote a letter on defendant's behalf stating he was a valued and conscientious worker. This strongly implies defendant left his employment because he was no longer able to appear for work because of his arrest.

[6] Because we find defendant's sentence constitutes cruel and unusual punishment, we do not address his ex post facto claim.

Providing scant analysis in his briefs, respondent takes the position the claim presents little need for discussion and asserts merely that, regardless of the current offense, the Legislature may rationally conclude that a person convicted of two or more serious or violent felonies should be permanently incapacitated, subject only to governmental grace to permit release on parole.[7] If that were so, the Eighth Amendment and its California analogue would have no application to recidivist sentences. That is not the case. (See *Solem v. Helm* (1983) 463 U.S. 277, 290 [77 L.Ed.2d 637, 649, 103 S.Ct. 3001] (*Solem*); *In re Grant* (1976) 18 Cal.3d 1 [132 Cal.Rptr. 430, 553 P.2d 590].) Moreover, reliance on the prior offenses as the sole basis for an increase in punishment would offend the double jeopardy clause of the United States Constitution. (*Ex parte Lange* (1874) 85 U.S. 163, 173 [21 L.Ed. 872, 878]; *Witte v. United States* (1995) 515 U.S. 389, 395–396 [132 L.Ed.2d 351, 361, 115 S.Ct. 2199]; *Duran v. Castro* (E.D. Cal. 2002) 227 F.Supp.2d 1121, 1130.)

However, because recidivist sentences are circumscribed by the prohibition against cruel and unusual punishment, we will conclude that a sentence of 25 years to life constitutes cruel and unusual punishment in the circumstances of this case.

### A. *United States Constitution*

■ The Eighth Amendment to the United States Constitution applies to the states via the Fourteenth Amendment (*Ewing v. California* (2003) 538 U.S. 11, 20 [155 L.Ed.2d 108, 117, 123 S.Ct. 1179] (*Ewing*) (lead opn. of O'Connor, J.); *Robinson v. California* (1962) 370 U.S. 660, 667 [8 L.Ed.2d 758, 82 S.Ct. 1417]) and "contains a 'narrow proportionality principle' that 'applies to noncapital sentences.' " (*Ewing, supra,* at p. 20 [155 L.Ed.2d at p. 117] quoting *Harmelin v. Michigan* (1991) 501 U.S. 957, 996–997 [115 L.Ed.2d 836, 865–866, 111 S.Ct. 2680] (*Harmelin*); *Lockyer v. Andrade* (2003) 538 U.S. 63, 72 [155 L.Ed.2d 144, 123 S.Ct. 1166].)

---

[7] However, for the first time on appeal at oral argument, the Attorney General argued that the purpose of the annual registration requirement is to update the offender's address and to provide a "current photograph," as required by subdivision (e)(2)(B) of section 290. There are two problems with this argument. First, in 1999 there was no requirement that defendant provide a "current" or updated photograph, only a photograph. The requirement that the photograph be "current" was added in 2000. (Stats. 2000, ch. 649, § 2.5.) Second, respondent assumes there was no "current" photograph in the file of his prior registration. In any event, defendant's parole agent had no trouble identifying him at the time of his arrest, fulfilling the manifest purpose of the statute.

 In conducting a proportionality review, the court has identified four principles that guide review, . . . "the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors'—that 'inform the final one: The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime.' " (*Ewing, supra*, 538 U.S. at p. 23 [155 L.Ed.2d at p. 119], quoting *Harmelin, supra*, 501 U.S. at p. 1001 [115 L.Ed.2d at p. 869].)

 In light of legislative primacy, reviewing courts "should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes . . . ." (*Solem, supra*, 463 U.S. at p. 290 [77 L.Ed.2d at p. 649].) *Solem* is one of the rare cases in which the court held that the Eighth Amendment prohibited a recidivist sentence of life in prison without the possibility of parole for a seventh nonviolent felony. In so doing, the court described the subject offense of uttering a "no account" check for $100, as " 'one of the most passive felonies a person could commit.' " (*Id.* at p. 296 [77 L.Ed.2d at p. 653].) Three objective factors guided the court's proportionality analysis, "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." (*Id.* at p. 292 [77 L.Ed.2d at p. 650].)

By contrast, the court in *Ewing* recently upheld a sentence of 25 years to life under California's Three Strikes law. The defendant was convicted of grand theft for shoplifting three golf clubs valued at $1,200, after previously being convicted of four serious felonies, including robbery and three burglaries. (*Ewing, supra*, 538 U.S. at pp. 17–18, 20 [155 L.Ed.2d at pp. 115–117].) Writing for the court, Justice O'Connor, joined by the Chief Justice and Justice Kennedy, recognized that recidivism is a serious public safety concern and noted that the "three strikes laws effected a sea change in criminal sentencing throughout the Nation. These laws responded to widespread public concerns about crime by targeting the class of offenders who pose the greatest threat to public safety: career criminals." (*Id.* at p. 24 [155 L.Ed.2d at p. 119], fn. omitted.)

Considering the gravity of the offense compared to the harshness of the penalty, the court found that felony grand theft "[e]ven standing alone . . . should not be taken lightly . . . [and] was certainly not 'one of the most passive felonies a person could commit.' " (*Ewing, supra*, 538 U.S. at p. 28 [155 L.Ed.2d at p. 122].) The lead opinion noted that in enacting the Three Strikes law, the Legislature "made a judgment that protecting the public

safety requires incapacitating criminals who have already been convicted of at least one serious or violent crime." (*Id.* at p. 25 [155 L.Ed.2d at p. 120].) Finding that the state's justification is not a pretext, the court noted that recidivism is a serious public safety concern, that 67 percent of former inmates released from prison were charged with at least one "serious" new crime within three years of their release, that a higher percentage of property offenders were arrested again within three years of their release than offenders committing violent, public-order, or drug offenses. (*Id.* at p. 26 [155 L.Ed. 2d at p. 120].)

A dissent, authored by Justice Breyer and joined by Justices Stevens, Souter and Ginsburg, concluded that Ewing's claim crossed the gross disproportionality threshold. (*Ewing, supra*, 538 U.S. at p. 37 [155 L.Ed.2d at p. 128].) They reasoned that "in cases involving recidivist offenders, we must focus upon 'the [offense] that triggers the life sentence,' with recidivism playing a 'relevant,' but not necessarily determinative, role." (*Id.* at p. 41 [155 L.Ed.2d at p. 130].) In the dissent's view, the sentence-triggering behavior in the case "ranks well toward the bottom of the criminal conduct scale." (*Id.* at p. 40 [155 L.Ed.2d at p. 130].)

Applying these principles, we find, as did the court in *Solem*, that this is a rare case, in which the harshness of the recidivist penalty is grossly disproportionate to the gravity of the offense. Indeed, because defendant's offense was an entirely passive, harmless, and technical violation of the registration law, it was less serious than the offense of uttering a no-account check committed by the defendant in *Solem*.

### 1. *Gravity of the Offense/Harshness of the Penalty*

### a. *The Current Offense*

The gravity of an offense can be assessed by comparing the harm caused or threatened to the victim or society and the culpability of the offender with the severity of the penalty. (*Solem, supra*, 463 U.S. at p. 292 [77 L.Ed.2d at pp. 650–651].)

A sex offender is required to register with police authorities upon conviction, coming into a jurisdiction, upon an address change (former § 290, subd. (a)(1)(A)), and annually to update the registration within five working days of the offender's birthday. (Former § 290, subd. (a)(1)(C); *People v. Barker* (2004) 34 Cal.4th 345, 357 [18 Cal.Rptr.3d 260.) The purpose of the registration requirement is to ensure that specified sex offenders are " 'readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future.' " (*People v. Barker,*

*supra,* at p. 357, quoting *Barrows v. Municipal Court* (1970) 1 Cal.3d 821, 825–826 [83 Cal.Rptr. 819, 464 P.2d 483].) As noted, the express purpose of the annual registration requirement is to "update" the registration with current information. (Former § 290, subd. (a)(1)(C).)[8]

■ The willful failure to register as a sex offender is a regulatory offense that may be committed merely by forgetting to register as required. (*People v. Barker, supra,* 34 Cal.4th at p. 354; *Wright v. Superior Court* (1997) 15 Cal.4th 521, 527 [63 Cal.Rptr.2d 322, 936 P.2d 101].) Prior to 1995, the offense was punishable as a misdemeanor (see Stats. 1985, ch. 1474, § 2, p. 5406); however, the offense is now a felony when the registration offense is punishable as a felony. (§ 290, subd. (g)(2); Stats. 1994, ch. 867, § 2.7, p. 4389.) The penalty is the lowest triad of terms prescribed for felonies, a prison term of 16 months, or two or three years. (§ 290, subd. (g)(2).)

While a violation of section 290 is classified as a felony, the instant offense was a passive, nonviolent, regulatory offense that posed no direct or immediate danger to society. Defendant committed this offense by violating the annual registration requirement (former § 290, subd. (a)(1)(C)), having correctly registered the proper information the month before. Obviously, no change had occurred in the intervening period and defendant's parole agent was aware of this fact. Thus, because defendant did not evade or intend to evade law enforcement officers, his offense was the most technical and harmless violation of the registration law we have seen.

The annual registration requirement was added in 1994 by Assembly Bill No. 3513. (Stats. 1994, ch. 867, § 2.7, p. 4389.) The analysis of the measure prepared for the Assembly Committee on Public Safety sheds some light on the purpose of this requirement. (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 3513 (1993–1994 Reg. Sess.), Apr. 5, 1994.) It states that "once an offender is not actively being supervised on parole, approximately 70 to 80% are not currently registered at the correct address." (*Id.,* p. 3.)

An enrolled bill report prepared for the Governor by the Office of Criminal Justice Planning contains the following explanation of the annual update provision: "the provision which mandates annual registration updates is an important element of this bill. Although individuals are required to update their registration if they move, many fail to do so. The purpose of this

---

[8] As applicable to this case in 1999, former section 290, subdivision (a)(1)(C) provided: "Beginning on his or her first birthday following registration or change of address, the person shall be required to register annually, within five working days of his or her birthday, to update his or her registration with the entities described in subparagraph (A), including, verifying his or her name and address, or temporary location, on a form as may be required by the Department of Justice." (Stats. 1998, ch. 930, § 1.1.)

amendment is to reduce the number of out of date registrations. Staff noted that requiring annual updates will improve the current program in two ways: 1) the regularity of the updating, coupled with the increased penalties may improve registration compliance; and 2) local law enforcement will have a functional means of identifying those who fail to update their registration on an annual basis. Currently, law enforcement has no means of checking to see if a person has failed to notify the agency of a change of address." (Cal. Off. Criminal Justice Planning, Enrolled Bill Rep. on Assem. Bill No. 3513 (1993–1994 Reg. Sess.) Sept. 7, 1994, p. 4.)

Thus, the available legislative history suggests the annual registration requirement was intended to address the problem of offenders who fail to notify authorities of an address change because they are no longer under active parole supervision. Although this requirement serves a legitimate purpose, it is nevertheless a backup measure to ensure that authorities have current accurate information. In this case, when defendant failed to register within five days of his birthday, he was still on parole, had recently updated his registration, had not moved or changed any other required registration information during the one month since he registered, and was in contact with his parole officer. Therefore, his failure to register was completely harmless and no worse than a breach of an overtime parking ordinance. (See *Rummel v. Estelle* (1980) 445 U.S. 263, 274, fn. 11 [63 L.Ed.2d 382, 391, 100 S.Ct. 1133] [suggesting that the state cannot mandate a mandatory life sentence for overtime parking, even for a serious recidivist].)

Yet defendant was sentenced to a term of 25 years to life in prison. In real terms, he must serve 25 years in prison before he is eligible for parole. (*In re Cervera* (2001) 24 Cal.4th 1073, 1076 [103 Cal.Rptr.2d 762, 16 P.3d 176] [a third strike felon cannot have his minimum term of 25 years reduced with good time credits].) He will be 65 years old before he is even eligible for parole, having spent his remaining active years in prison. It is beyond dispute that a life sentence is grossly disproportionate to the offense just described.

b. *Recidivism*

We must also take into consideration that defendant is a repeat offender (§ 667, subd. (e)(2)(A); *Ewing, supra*, 538 U.S. at pp. 24–26 [155 L.Ed.2d at pp. 119–120]) whom the Legislature may punish more severely than it punishes a first-time offender. (*Id.* at pp. 29–30 [155 L.Ed.2d at p. 123].) Since the current offense is a repetitive one, the Legislature may impose stiffer penalties by treating the prior convictions as factors in aggravation. (*Witte v. United States, supra*, 515 U.S. at pp. 402–403 [132 L.Ed.2d at p. 366].) Nevertheless, because the penalty is imposed for the current offense, the focus must be on the seriousness of that offense. (*Ibid.*)

██ Past offenses do not themselves justify imposition of an enhanced sentence for the current offense. (*Ewing, supra,* 538 U.S. at p. 26 [155 L.Ed.2d at p. 120] (lead opn. of O'Connor, J.).) The double jeopardy clause prohibits successive punishment for the same offense. (*Ex parte Lange, supra,* 85 U.S. at p. 173 [21 L.Ed. at p. 878]; *Witte v. United States, supra,* 515 U.S. at pp. 395–396 [132 L.Ed.2d at p. 361].) The policy of the clause therefore circumscribes the relevance of recidivism. (*Duran v. Castro, supra,* 227 F.Supp.2d at p. 1131, citing *Monge v. California* (1998) 524 U.S. 721, 729 [141 L.Ed.2d 615, 624, 118 S.Ct. 2246].) To the extent the "punishment greatly exceeds that warranted by the aggravated offense, it begins to look very much as if the offender is actually being punished again for his prior offenses." (*Duran v. Castro, supra,* 277 F.Supp.2d at p. 1130.)

Given the minimal and completely harmless nature of defendant's offense and the relatively light penalty prescribed for a simple violation of the registration requirements, defendant's prior serious and violent felonies almost wholly account for the extreme penalty imposed on defendant. Indeed, the California Supreme Court has declared that the purpose of the Three Strikes law " 'is to *punish* recidivism.' " (*People v. Murphy* (2001) 25 Cal.4th 136, 155 [105 Cal.Rptr.2d 387, 19 P.3d 1129], italics added.)

██ When the purpose of a penalty is to punish recidivism and not the current offense, the penalty is for past crimes and as stated, is proscribed. (*Ex parte Lange, supra,* 85 U.S. at p. 173 [21 L.Ed. at p. 878]; *Witte v. United States, supra,* 515 U.S. at pp. 395–396 [132 L.Ed.2d at p. 361].) A sentence of 25 years to life in prison serves the penological purpose of protecting society from career criminals by incapacitating and isolating them with long prison terms. (*Ewing, supra,* 538 U.S. at pp. 26–27 [155 L.Ed.2d at p. 121].) Imposing such a sentence on a defendant who is 40 years old at the time of the offense, will effectively incapacitate him for the rest of his active years. That sentence does not, however, serve to protect the public when the current offense bears little indication he has recidivist tendencies to commit offenses that pose a risk of harm to the public.

Defendant's *only* sexual offense was committed in 1983, 16 years before the current offense, while his two prior violent felony convictions were committed in 1992 and involved assaults on two girlfriends.[9] Although he has not lived crime-free since 1992, neither has he committed other serious or violent offenses since that time. Defendant's Three Strike offenses are remote from and bear no relation to the current offense and the current offense

[9] In 1992, defendant was convicted of assault with a deadly weapon or by means of force likely to produce great bodily injury. (§ 245, subd. (a)(1).) The first conviction arose when he punched and kicked his pregnant girlfriend, causing a miscarriage. The second conviction arose when he pushed and punched another girlfriend, and then cut her hand with a knife.

reveals no tendency to commit additional offenses that pose a threat to public safety. It follows that the strike offenses cannot justify a recidivist penalty with a mandatory minimum term that is over eight times as long as the term that would otherwise be imposed for violating the duplicate registration requirement.

For these reasons a prison term of 25 years to life is grossly disproportionate to the gravity of the duplicate registration offense and therefore crosses the proportionality threshold.

### 2. *Intrajurisdictional Comparison*

Defendant's sentence is indisputably severe. For first-time offenders, his penalty is exceeded only by a sentence of life without the possibility of parole or death imposed for first degree murder (§ 190, subd. (a)), while it is substantially greater than the penalties for far more serious or violent felonies (§ 667.5, subd. (c)) such as second degree murder, punishable by 15 years to life (§§ 189, 190, subd. (a)), voluntary manslaughter, punishable by three, six, or 11 years (§§ 192, subd. (a), 193, subd. (a)), mayhem, punishable by two, four, or eight years (§ 204), kidnapping, punishable by three, five, or eight years (§§ 207, 208), first degree robbery, punishable by three, six, or nine years (§§ 211, 213, subd. (a)(1)(A)), rape, punishable by three, six, or eight years (§§ 261, 264, subd. (a)), oral copulation with a person under 14 years of age and more than 10 years younger or by force or violence, punishable by three, six, or eight years (§ 288a, subd. (c)), and lewd acts on a child under the age of 14 years, punishable by three, six, or eight years (§ 288, subd. (a)), to name a few.

Because defendant must serve a minimum of 25 years in prison (*In re Cervera, supra,* 24 Cal.4th at p. 1076), his sentence is almost three times as severe as most of the offenses listed above, and 10 years longer than that required for second degree murder.

Considering the penalties imposed on recidivist offenders, defendant's sentence is also substantially longer than a second strike offender whose present offense is one of the violent offenses listed above. Under the Three Strikes law, a second strike offender is punished by doubling the penalty otherwise required by law. (§ 667, subd. (e)(1).)[10] Applying that formula,

---

[10] Section 667, subdivision (e) provides in pertinent part: "For purposes of subdivisions (b) to (i), inclusive, and in addition to any other enhancement or punishment provisions which may apply, the following shall apply where a defendant has a prior felony conviction:

(1) If a defendant has one prior felony conviction that has been pled and proved, the determinate term or minimum term for an indeterminate term shall be twice the term otherwise provided as punishment for the current felony conviction."

defendant's sentence is longer than the sentence required for a second strike offender who commits second degree murder (22 years to life) and is substantially longer than a sentence imposed on a second strike offender who commits one of the other violent felonies listed above. However, it is not reasonable to conclude the offense committed by defendant, even when viewed in light of his criminal record, poses a greater risk to the public than a violent offense committed by a second strike offender.

It is no answer that defendant's penalty is the same as the penalty imposed for all other third strike offenders. (See *People v. Meeks* (2004) 123 Cal.App.4th 695 [20 Cal.Rptr.3d 445].) In *Meeks,* our colleagues upheld a 25 years to life sentence imposed on a third strike offender whose current offense was a willful failure to register within five working days of an address change. (*Id.* at p. 700.) The majority summarily dismissed the claim of disproportionality under the intrajurisdictional technique by concluding that the defendant's "sentence is no more severe than that of any other defendant in California with a similar criminal history who is convicted of a felony." (*Id.* at p. 710.)[11]

To the contrary, it is for this very reason that we find defendant's sentence suspect. A one-size-fits-all sentence does not allow for gradations in culpability between crimes and therefore may be disproportionate to the crime when, as here, the crime is minor and the penalty severe. Many of the current offenses committed by Three Strike offenders are serious or violent offenses or felonies posing far greater threats to the public's safety and involving far greater culpability than the offense committed by defendant. Thus, the analysis under this criteria also supports our conclusion that the sentence is disproportionate to the gravity of the offense.

### 3. *Interjurisdictional Analysis*

Likewise, an interjurisdictional analysis also suggests defendant's punishment is excessive. Defendant's counsel on appeal has presented a nationwide chart, which shows the penalties for violating sex offender registration requirements. From these authorities, he correctly concludes that California stands alone in mandating a sentence of 25 years to life for a violation of the annual registration requirement by a recidivist offender with a criminal history comparable to Mr. Carmony's. Respondent does not dispute this claim.

---

[11] We note the offense committed by Meeks was not the technical violation committed by defendant. Meeks failed to register after changing his residence and therefore, unlike in the present case, law enforcement authorities did not have Meeks's correct address and information. (*People v. Meeks, supra,* 123 Cal.App.4th at p. 701.)

We first note that respondent has conceded in an unrelated case, that " 'the [Three Strikes law] . . . is the most stringent in the nation' " (*Ramirez v. Castro* (9th Cir. 2004) 365 F.3d 755, 772) and has conceded in this case, that no other state compels a life sentence of 25 years to life for violation of the annual registration requirement.

A review of the authorities cited by defendant supports respondent's concessions.

First, we should point out that not all states require the offender to annually update his or her registration, while other states send annual address verification forms to registrants.[12] Second, although the penalties prescribed by the various states for violating sex offender registration laws differ widely, four states classify it solely as a misdemeanor,[13] while another 13 states and the District of Columbia classify the first offense as a misdemeanor, treating a subsequent violation as a felony.[14]

More importantly, the penalties also vary widely for recidivist offenders. In 12 states, a violation of the sex offender registration requirement is not subject to the recidivist statutes at all,[15] while in 13 states the penalties range

---

[12] Arkansas Code Annotated section 12-12-909; Connecticut General Statutes Annotated section 54-252(a); District of Columbia Code section 22-4014(4).

[13] Maryland Code of Criminal Procedure Annotated sections 11-704, 11-721; Oregon Revised Statutes section 181.599(2); New Jersey Statutes Annotated sections 2C:7-2(a)(2), 2C:43-6(a)(4); Utah Code Annotated section 77-27-21.5(9) and (13)(a).

[14] Alaska Statutes sections 11.56.840(b), 11.56.835(a) and (d); District of Columbia Code section 22-4015(a); Hawaii Revised Statutes section 846E-9(c) (misdemeanor if reckless rather than intentional); Iowa Code section 692A.7(1); Maine Revised Statutes Annotated title 34-A, section 11227 (first and second violations are misdemeanors); Massachusetts General Laws chapter 6, sections 178F1/2 and 178H (wobbler); Missouri Revised Statutes section 589.425(1); New Hampshire Revised Statutes Annotated section 651-B:9(II); New York Correction Law section 168-t; North Dakota Century Code section 12.1-32-15(9); South Carolina Code Annotated sections 23-3-470(B)(1) (third violation is a felony), 17-25-45; South Dakota Codified Laws section 22-22-31; West Virginia Code section 15-12-8(a); Wyoming Statutes Annotated sections 7-19-302, 7-19-307(c).

[15] Hawaii Revised Statutes sections 846E-2, 846E-9(b), 706-660(2), 706-606.5; 720 Illinois Compiled Statutes 5/33B-1, 730 Illinois Compiled Statutes 150/10; Kansas Statutes Annotated sections 21-4504, 22-4903; Maryland Criminal Law Code Annotated section 14-101; Minnesota Statutes section 609.1095; Ohio Revised Code Annotated sections 2950.99(a)(1)(a)(i), 2929.14(A)(3), see *Ewing, supra,* 538 U.S. at page 56 [155 L.Ed.2d at p. 140] (appen. to' dis. opn. of Breyer, J.); Oregon Revised Statutes section 181.599(2), see *Ewing, supra,* 538 U.S. at page 56; South Carolina Code sections 23-3-470, 17-25-45; Utah Code Annotated sections 76-3-203.5, 76-3-407, 77-27-21.5(9) and (13); Virginia Code Annotated sections 9.1-901, 19.2-297.1; Washington Revised Code sections 9.94A.575, 9.94A.030(28) and (32), 9.94A.570; Wyoming Statutes Annotated sections 7-19-307(d), 6-10-201.

from one to 10 years depending on the recidivism statute.[16] *Most importantly for the facts of this case, only five states other than California impose recidivist penalties for violation of an annual registration requirement.* Of those states, the longest term imposed is 10 years,[17] less than one-half the term compelled under California law.

*Thus, California is the only state that requires a life sentence with a mandatory prison term of 25 years prior to parole eligibility for a Three Strikes offender whose violation is noncompliance with the annual registration requirement.*

Moreover, as noted in appendix A to Justice Breyer's dissent in *Ewing*, 33 states and the federal courts have laws that limit the sentence that may be imposed on a Three Strikes offender convicted of grand theft to no more than 10 years in prison. (See citations collected in *Ewing, supra*, 538 U.S. at pp. 53–62 [155 L.Ed.2d at pp. 138–143].) We need not belabor the fact that grand theft poses a far greater threat to public safety and involves substantially more culpability than the harmless offense committed by defendant. (Contra, *People v. Meeks, supra*, 123 Cal.App.4th at p. 710.)

■■■ Accordingly, for these additional reasons this case is one of those rare cases in which the harshness of the Three Strikes sentence is grossly disproportionate to the gravity of the predicate offense. We therefore hold that the recidivist penalty is grossly disproportionate to the duplicate registration offense and violates the cruel and unusual punishment clause of the United States Constitution.

---

[16] Alaska Statutes sections 11.56.835(d), 12.55.125(e); Arizona Revised Statutes sections 13-3821, 13-3824, 13-604(A) and (E); Connecticut General Statutes sections 54-254(b), 53a-35a(6), 53a-40(c) and (j); Georgia Code Annotated sections 17-10-7(c), 42-1-12 (h), 42-9-44.1; Iowa Code sections 692A.3(1), 692A.7(1), 902.8, former section 909.9(3); Maine Revised Statutes, title 34-A, section 11227, title 17-A, section 1252(2)(C); Massachusetts General Laws chapter 6, sections 178F 1/2, 178H(a)(2), chapter 279, section 25; Mississippi Code Annotated sections 45-33-33(2), 99-19-81; Missouri Revised Statutes sections 589.425(2), 558.011(1)(4), 558.016; New Jersey Statutes Annotated sections 2C:7-2(a)(1) and (e), 2C:43-7, 2C:43-6(a)(4), 2C:44-3; New Mexico Statutes Annotated sections 29-11A-4(H) and (I), 31-18-15(A)(8), 31-18-17(B) and (C); North Dakota Century Code sections 12.1-32-15(9), 12.1-32-09(2)(c); Wisconsin Statutes sections 301.45, 939.62(1)(b).

[17] Massachusetts General Laws chapter 6, sections 178F 1/2, 178H(a)(2), chapter 279, section 25 (not more than five years); Maine Revised Statutes title 34-A, section 11227(3) (July 1, 2004); Maine Revised Statutes title 17-A, section 1252(2)(C) (not more than five years); Mississippi Code Annotated sections 45-33-33(2), 99-19-81 (five years); New Mexico Statutes Annotated sections 29-11A-4(H) and (I), 31-18-15(A)(8), 31-18-17(C) (eight years); Wisconsin Statutes sections 301.45, 939.62(1)(b) (10 years).

### B. *California Constitution*

 Turning to California law, article I, section 17 of the California Constitution (hereafter section 17) prohibits the infliction of "[c]ruel or unusual punishment . . . ."

Unlike its federal counterpart, this provision forbids cruel *or* unusual punishment, a distinction that is purposeful and substantive rather than merely semantic. (*People v. Anderson* (1972) 6 Cal.3d 628, 634–637, 645 [100 Cal.Rptr. 152, 493 P.2d 880], superseded on other grounds; *People v. Weddle* (1991) 1 Cal.App.4th 1190, 1196, fn. 5 [2 Cal.Rptr.2d 714].) For that reason, it is construed separately from the federal prohibition against cruel and unusual punishment. (*People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1135–1136 [46 Cal.Rptr.2d 351]; *Raven v. Deukmejian* (1990) 52 Cal.3d 336, 355 [276 Cal.Rptr. 326, 801 P.2d 1077].)

 A sentence will not be allowed to stand under section 17 if "it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, fn. omitted [105 Cal.Rptr. 217, 503 P.2d 921] (*Lynch*); *People v. Dillon* (1983) 34 Cal.3d 441, 478 [194 Cal.Rptr. 390, 668 P.2d 697].) The "power to prescribe penalties must ' "be exercised within the limits of civilized standards" ' [Citations] . . . [and] 'must treat its members with respect for their intrinsic worth as human beings.' " (*Lynch, supra,* 8 Cal.3d at p. 424.) Much like the criteria used in an Eighth Amendment analysis, the court in *Lynch* considered three techniques for evaluating a claim of cruel or unusual punishment. First, the court examines "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society." (*Id.* at p. 425.) Relevant factors to consider are the facts of the current crime, the minor nature of the offense, the absence of aggravating circumstances, whether it is nonviolent, and whether there are rational gradations of culpability that can be made on the basis of the injury to the victim or to society in general. (*Id.* at pp. 425–426.) Also relevant are the penological purposes of the prescribed punishment. (*In Re Foss* (1974) 10 Cal.3d 910, 919–920 [112 Cal.Rptr. 649, 519 P.2d 1073].)

The second technique requires a comparison of "the challenged penalty with the punishments prescribed in the *same jurisdiction for different offenses* which, by the same test, must be deemed more serious." (*Lynch, supra,* 8 Cal.3d at p. 426.) The third technique "compare[s] . . . the challenged penalty with the punishments prescribed for the *same offense* in *other jurisdictions* . . . ." (*Id.* at p. 427.) Again, if the challenged penalty exceeds the punishments prescribed in other jurisdictions, "the disparity is a further measure of its excessiveness." (*Ibid.*)

In making this determination, our authority is circumscribed by the separation of powers doctrine. "[I]n our tripartite system of government it is the function of the legislative branch to define crimes and prescribe punishments, and that such questions are in the first instance for the judgment of the Legislature alone." (*Lynch, supra,* 8 Cal.3d at p. 414.) However, " 'the final judgment as to whether the punishment it decrees exceeds constitutional limits is a judicial function.' " (*Ibid.*) To maintain this balance of power we must uphold statutes " ' "unless their unconstitutionality clearly, positively and unmistakably appears." ' " (*Id.* at p. 415, quoting *In re Dennis M.* (1969) 70 Cal.2d 444, 453 [75 Cal.Rptr. 1, 450 P.2d 296].)

As the court in *Lynch* explained, " '[b]y observing this cautious, often burdensome and sometimes unpopular procedure, the courts can often prevent the will of the majority from unfairly interfering with the rights of individuals who, even when acting as a group, may be unable to protect themselves through the political process. In this way, judicial review assures a government under the laws.' " (*Lynch, supra,* 8 Cal.3d at p. 415, quoting Wright, *The Role of the Judiciary: From Marbury to Anderson* (1972) 60 Cal. L.Rev. 1262, 1268.)

Although our discussion in part I.A. is equally applicable under the *Lynch* techniques, the following points are particularly pertinent under *Lynch*.

### 1. The Nature of the Offense and the Offender

We first look at the offense in the abstract, and, as we have shown in part I.A., the offense of willful failure to file a duplicate registration as a sex offender is a passive, nonviolent, regulatory offense, which causes no harm and poses no danger to the public. Moreover, as the court in *In re Grant, supra,* 18 Cal.3d at page 10, stated, " 'the measure of the constitutionality of punishment for crime is individual culpability . . . .' "

In *In re Grant*, the court struck down a sentence of 10 years to life in prison for the sale of marijuana with two prior drug offenses. In so doing, the court thought it "particularly significant that the[] provisions for recidivist narcotics offenders penalize broad ranges of conduct and widely differing types of offenders without distinction, requiring substantial enhanced mandatory prison terms because of prior offenses regardless of their temporal remoteness, lack of relevance to the new offense, or relative gravity." (*In re Grant, supra,* 18 Cal.3d at p. 10.) The court concluded that the enhanced penalties for repeated violations are suspect to the extent they limit the sentencing authority's ability to recognize gradations of culpability. (*Id.* at pp. 10–11.)

Likewise, the life sentence required by the Three Strikes law fails to take into account variations in individual culpability. As discussed in part I.A., the penalty for a violation of section 290 is relatively light. (§ 290, subd. (g)(2).) By contrast, the sentence for a third strike felony offense, such as the one imposed on defendant, is a life sentence with a minimum term calculated as the greater of three specified formulas.[18] The shortest minimum term required for the indeterminate life sentence is 25 years before parole eligibility. (*In re Cervera, supra,* 24 Cal.4th at p. 1076.) The mandatory sentence must be imposed regardless of the gravity of the present or prior offenses, the temporal remoteness of the prior convictions, or their lack of relevance to the new offense. (*In re Grant, supra,* 18 Cal.3d at p. 10.)

The disparity between the severity of the sentence and the gravity of the offense is even greater when we consider the circumstances of the particular offense. Defendant's offense is a felony in name only. In fact, it was a harmless violation of a regulatory requirement. Because his prior strike offenses are remote and irrelevant to his current offense, they are poor indicators he is likely to commit future offenses that pose a serious threat to public safety. The potential risk posed by his failure to update his registration is further undercut by the fact he has not committed any further sex offenses and had recently updated his registration.[19]

Defendant's probation report shows that prior to the instant offense, he was acting in a responsible manner. He had recently married, maintained a residence, participated in Alcoholics Anonymous, was seeking job training and placement, and was employed. The record indicates that just prior to the current offense, he worked as a forklift operator for Hartsell Trucking in Redding and was employed by them until November 24, 1999, the day

---

[18] Section 667 provides in pertinent part: "(e) For purposes of subdivisions (b) to (i), inclusive, and in addition to any other enhancement or punishment provisions which may apply, the following shall apply where a defendant has a prior felony conviction: [¶] . . . [¶]

"(2)(A) If a defendant has two or more prior felony convictions as defined in subdivision (d) that have been pled and proved, the term for the current felony conviction shall be an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greater of:

"(i) Three times the term otherwise provided as punishment for each current felony conviction subsequent to the two or more prior felony convictions.

"(ii) Imprisonment in the state prison for 25 years.

"(iii) The term determined by the court pursuant to Section 1170 for the underlying conviction, including any enhancement applicable under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2, or any period prescribed by Section 190 or 3046."

[19] Although defendant's parole officer held the view that defendant has a great potential for violence, the absence of any recent convictions for serious or violent offenses weakens the inference that defendant is presently dangerous.

following his arrest for the present offense.[20] According to the operations manager at Hartsell, who wrote a letter on defendant's behalf, defendant was a valued and conscientious worker. Clearly then, neither defendant's present offense nor his behavior just prior to the offense indicates that he posed a serious risk of harm to the public justifying a life sentence.

We conclude that because a one-size-fits-all 25 years to life sentence does not allow for gradations in culpability between crimes, it is disproportionate to the current offense, where as here, the offense is minor and the prior convictions are remote and irrelevant to the offense. (*In re Grant, supra,* 18 Cal.3d at p. 10.)

 As the court stated in *People v. Cluff* (2001) 87 Cal.App.4th 991 at page 1004 [105 Cal.Rptr.2d 80], with respect to a Three Strikes sentence of 25 years to life for failing to register as a sex offender, "we note that the severe penalty imposed on Cluff *appears disproportionate by any measure*. The nature of Cluff's current offense did not demonstrate recidivist tendencies toward child molestation. While there is no requirement that a third strike be a serious or violent felony, neither the Legislature nor the voters intended the Three Strikes law to be used as a nuisance statute to rid society forever of persons who fail to meet technical requirements to confirm an accurate registration." (Italics added.)

### 2. *Intrajurisdictional Comparison*

 Under an intrajurisdictional analysis, we "compare the challenged penalty with the punishments prescribed in the same jurisdiction for different offense which, by the same test, must be deemed more serious." (*Lynch, supra,* 8 Cal.3d at p. 426, italics omitted.) To the extent the challenged penalty exceeds the punishments prescribed for more serious offenses, it is suspect. The assumption is that, although the Legislature may enact isolated excessive penalties in response to transitory public emotion, it is presumed to prescribe the vast majority of punishments within constitutional limits. (*Ibid.*)

For the reasons stated in part I.A.2. we find the harsh sentence imposed on defendant is excessive under this technique as well.

---

[20] As noted, the record strongly implies that defendant left his employment not because he was irresponsible but because he was no longer able to appear for work after he was arrested for the instant offense and taken into custody. (See fn. 5, *ante.*)

### 3. *Interjurisdictional Analysis*

█ An interjurisdictional analysis also suggests the penalty is excessive. The underlying assumption of this comparison "is that the vast majority of those jurisdictions will have prescribed punishments for this offense that are within the constitutional limit of severity; and if the challenged penalty is found to exceed the punishments decreed for the offense in a *significant* number of those jurisdictions, the disparity is a further measure of its excessiveness." (*Lynch, supra,* 8 Cal.3d at p. 427, italics added.)

Again, for the reasons discussed in part I.A.3., we conclude that the sentence imposed on defendant exceeds the punishments prescribed for the offense in a significant number of those jurisdictions. (*Lynch, supra,* 8 Cal.3d at p. 427.)

█ For these reasons, we conclude that an enhanced sentence of 25 years to life for the duplicate registration offense committed by defendant shocks the conscience of this court. We therefore hold it to be cruel and unusual punishment in violation of article I, section 17.

II*

*Blakely v. Washington*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is reversed and the case is remanded to the trial court for resentencing consistent with this decision.

Sims, J., concurred.

**NICHOLSON, J.,** Concurring and Dissenting.—I concur with and join part II of the majority opinion but respectfully dissent as to part I. In my view, the sentence imposed on this defendant did not violate the federal proscription on cruel and unusual punishment or the state proscription on cruel or unusual punishment.

### *United States Constitution*

An indeterminate 25-years-to-life sentence under the "Three Strikes" law does not violate the United States Constitution. (*Ewing v. California* (2003)

---

*See footnote, *ante,* page 1066.

538 U.S. 11, 29–31 [155 L.Ed.2d 108, 122–123, 123 S.Ct. 1179].) This court has already rejected, in *People v. Meeks* (2004) 123 Cal.App.4th 695 [20 Cal.Rptr.3d 445], the proposition the majority now embraces. "[A] sentence of 25 years to life in prison for failing to register cannot be considered a sentence that is grossly disproportionate to his crime in light of his long and serious criminal history." (*Id.* at p. 708.) The majority's weak rationalization for departing from precedent, offered in a footnote, is that "Meeks failed to register after changing his residence and therefore, unlike in the present case, law enforcement authorities did not have Meeks's correct address and information." (Maj. opn., *ante*, at p. 1082, fn. 11.) Meeks was living with his sister-in-law after being evicted from his prior residence. He had frequent contact with law enforcement officers, who knew about his duty to register. He was not hiding. Defendant violated the same law the defendant in *Meeks* violated. I see no reason to turn precedent on its ear.

### California Constitution

Neither does the sentence imposed here violate the California Constitution's proscription on cruel or unusual punishment. (*People v. Meeks, supra,* 123 Cal.App.4th at pp. 709–710.)

### Majority Analysis

The majority goes astray, I believe, because it begins with several unsupported and unsupportable assumptions.

1. "If the constitutional prohibition is to have a meaningful application it must prohibit the imposition of a recidivist penalty based on an offense that is no more than a harmless technical violation of a regulatory law." (Maj. opn., *ante*, at p. 1072.)

The majority's opinion concerning the importance of sex offender registration is inconsistent with California public policy. "California has recognized, and reasonably so, that sex offenders present a serious danger to society because of their tendency to repeat their sexual offenses. Sexual offenses not only invade the deepest privacies of a human being, and thereby may cause permanent emotional scarring, but they frequently result in serious physical harm to, or death of, the victim. Hence, ' "it is necessary to provide for continued registration" to effectuate the statutory purpose of protecting the safety and general welfare of the public.' [Citation.] Defendant's willingness to ignore his duty to register and thus ignore society's right to maintain some

control over sexual offenders may seem 'de minimis' to him but oes not seem so to a society seeking to protect itself from sexual predators." (*People v. Meeks, supra,* 123 Cal.App.4th at p. 709.)

In this case, the authorities found defendant where he had last registered. The majority calls this "a harmless technical violation of a regulatory law." (Maj. opn., *ante,* at p. 1072.) Once we catch a person who has failed to register, we know where he is. That is fortunate, but it does not justify the violation of an important public safety statute. We rightly place strict requirements on sex offenders so we can keep tabs on them.

2. "[T]he current offense must bear the weight of the recidivist penalty imposed." (Maj. opn., *ante,* at p. 1072.)

In *Ewing v. California,* the defendant made the same argument. The lead opinion responded: "The gravity of his offense was not merely 'shoplifting three golf clubs.' Rather, Ewing was convicted of felony grand theft for stealing nearly $1,200 worth of merchandise after previously having been convicted of at least two 'violent' or 'serious' felonies. " (*Ewing v. California, supra,* 538 U.S. at p. 28.) Here, defendant committed the felony of failing to register after having been convicted of two violent or serious felonies. That is the relevant set of circumstances that must bear the weight of the penalty imposed.

3. "[T]he requirement that defendant reregister within five days of his birthday served no stated or rational purpose of the registration law and posed no danger or harm to anyone." (Maj. opn., *ante,* at p. 1073.)

Under this rationale, the sex offender registration statute serves no rational purpose unless the sex offender has moved since the last time he registered. I disagree. While it was fortuitous that defendant was found where he had last registered, the requirement to register at continuing intervals is rational and supported by the policy discussed above.

4. While acknowledging that only in a rare case will a punishment be deemed cruel and unusual under the federal Constitution or cruel or unusual under the state Constitution, the majority declares, "there must be a bottom to that well." (Maj. opn., *ante,* at p. 1072.) This case does not present a bottom-of-the-well scenario. It would be cruel and unusual to torture a third-striker or to give a life term to a petty thief with no prior record. Those are bottom-of-the-well scenarios.

*Conclusion·*

These are my points of departure from the majority's analysis. Since this court has already spoken on this issue, I would follow that holding and uphold defendant's sentence against the challenge that it is cruel and unusual under the federal Constitution or cruel or unusual under the state Constitution.

Appellant's petition for review by the Supreme Court was denied June 29, 2005. Brown, J., did not participate therein. Kennard, J., and Baxter, J., were of the opinion that the petition should be granted.