**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| CHARLES W. WINDHAM, | No. 12-56397 |
| Petitioner - Appellant, | D.C. No. 5:09-cv-02340-RSWL-JEM |
| v. | |
| MATTHEW L. CATE, Secretary of CDCR; JERRY BROWN, Attorney General of California, | MEMORANDUM* |
| Respondents - Appellees. | |

Appeal from the United States District Court
for the Central District of California
Ronald S.W. Lew, Senior District Judge, Presiding

Argued and Submitted November 21, 2014
Pasadena, California

Before: W. FLETCHER and BYBEE, Circuit Judges, and EZRA, District Judge.**

Charles Windham appeals the district court's judgment denying his petition

for a writ of habeas corpus. Windham was convicted in 2002 of three counts of

---

\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

\*\* The Honorable David A. Ezra, District Judge for the U.S. District Court for the Western District of Texas, sitting by designation.

violating California's sex-offender registration laws: one count of failing to notify law enforcement of a change in his address (Cal. Penal Code § 290(f)(1) (2000)) and two counts of failing to update his sex offender registration annually (Cal. Penal Code § 290(a)(1) (2000)). Pursuant to California's Three Strikes law, he received three sentences of 25 years to life in prison—one on each count—to run consecutively.

After the district court dismissed Windham's habeas corpus petition, we granted a certificate of appealability on the following issue: "whether [Windham's] sentence of 75 years to life constitutes cruel, unusual and disproportionate punishment in violation of the Eighth Amendment, including whether [trial] counsel was ineffective for failing to raise this issue at sentencing." Because no state court has passed upon the merits of these questions, we review both *de novo*. *Pirtle v. Morgan*, 313 F.3d 1160, 1167–68 (9th Cir. 2002). We affirm the decision of the district court.

We first conclude that Windham's sentence does not violate the Eighth Amendment. Although a sentence of 75 years to life is indisputably harsh, we must weigh the harshness of this punishment against the gravity of Windham's offenses and, if that comparison does not "lead[] to an inference of gross disproportionality," we must reject Windham's Eighth Amendment claim.

2

*Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991) (Kennedy, J., concurring in part and concurring in the judgment). A comparison between the gravity of Windham's present and past offenses and the harshness of his sentence raises no such inference.

Our case law "emphasize[s] a consistent principle found in the sex offender registration context—whether the crime is a *de minimis* crime for which a life sentence is disproportionate is related to how closely the violation is tied to helping achieve the purposes of the sex offender registration statute." *Crosby v. Schwartz*, 678 F.3d 784, 794 (9th Cir. 2012). In *Crosby*, we upheld the Three Strikes sentence (26 years to life) of a California sex offender who failed to notify law enforcement when he changed his address because that failure was "directly related" to the state's interest in keeping track of sex offenders and thus a serious offense that posed a threat to the public. *Id.* at 793–94. By contrast, in *Gonzalez v. Duncan*, we held that the Three Strikes sentence (25 years to life) of a defendant who failed to annually update his California sex-offender registration raised an inference of gross disproportionality because the defendant's crime was "'an entirely passive, harmless, and technical violation'" that caused the public no actual harm. 551 F.3d 875, 889 (9th Cir. 2008) (quoting *People v. Carmony*, 26 Cal. Rptr. 3d 365, 372 (Ct. App. 2005)).

Windham's case is far more akin to *Crosby* than to *Gonzalez*. Windham left California for a year and a half, in deliberate violation of his parole and without notifying law enforcement. When he returned to California, he lived out of his car and altered his appearance in order to avoid contact with the police. Windham, in other words, did not merely commit "passive" violations of the registration laws; rather, he actively and intentionally evaded police surveillance and, in so doing, posed a threat to the public. *See Crosby*, 678 F.3d at 794; *In re Coley*, 283 P.3d 1252, 1272 (Cal. 2012) (holding that a failure to update sex-offender registration should not be considered a minor or technical offense when committed "as part of a more general course of conduct that demonstrates a deliberate general unwillingness to comply with the sex offender registration requirements"). His offenses of conviction were therefore serious offenses that warranted substantial punishment.

We must also take Windham's criminal history into account in assessing the gravity of his offense. *Ewing v. California*, 538 U.S. 11, 29 (2003) (plurality opinion). Although most of Windham's criminal record derives from a single incident, that incident—which led to his conviction in 1985 of two counts of forcible rape, two counts of kidnapping, and one count of assault with a deadly weapon—was both violent and disturbing. After considering Windham's 1985

4

convictions together with his present offenses, we conclude that Windham's "is not the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id.* at 30 (internal quotation marks omitted).

Because Windham's Eighth Amendment claim fails on the merits, we reject his claim of ineffective assistance of counsel on the grounds that Windham suffered no prejudice from his attorney's failure to make an Eighth Amendment argument at sentencing. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).

**AFFIRMED.**