Filed 12/11/14  P. v. Smith CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BOBBIE SMITH,<br><br>    Defendant and Appellant. | B250733<br><br>(Los Angeles County<br>Super. Ct. No. PA068237) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  David B. Gelfound, Judge.  Affirmed.

Nancy J. King, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Kenneth C. Byrne and Seth P. McCutcheon, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury found Bobbie Smith guilty of false imprisonment by violence (Pen. Code, § 236),[1] attempted forcible rape (§§ 261, subd. (a)(2), 664), and felonious indecent exposure (§ 314, subd. (1)). In a bifurcated trial, the jury found Smith had 11 prior strike convictions. The trial court sentenced him to 30 years to life in prison. In a prior appeal,[2] this court reversed Smith's convictions for false imprisonment and attempted rape based on insufficiency of the evidence. On remand, the trial court sentenced Smith to 25 years to life in prison on the remaining conviction for felonious indecent exposure.

In this appeal, Smith contends his sentence violates the constitutional ban on cruel and unusual punishment. He also contends the trial court abused its discretion when it sentenced him as a third strike offender under the "Three Strikes" law instead of exercising its discretion to dismiss a prior strike conviction in furtherance of justice under section 1385. Rejecting Smith's contentions, we affirm.

## BACKGROUND

In setting forth the evidence presented at trial, the verdicts, and the original sentence, we quote from our opinion in the prior appeal in this case:

"**I. Prosecution Evidence**

"On July 21, 2010, at about 8:00 a.m., 19-year-old A. M. arrived with her two-month-old baby at her mother-in-law's business, a traffic school, and parked her car outside a closed gate in front of the school. The office had not yet opened and A. was there to meet a client of the school. When A. first arrived at the school, she noticed appellant [Smith] sweeping outside a business next door to the school. She recognized him as having swept outside the traffic school once in the past.

"After the client left, A. walked to the gate, opened it so she could park inside, and was getting back into her car when appellant approached and asked if she needed help with the gate. As appellant talked, A. noticed he was looking 'toward [her] breast' and

---

[1] Further statutory references are to the Penal Code.

[2] *People v. Smith* (Feb. 27, 2013, B234315) [nonpub. opn.].

2

toward [her] vaginal area.' A. told appellant that she did not need help and proceeded to drive through the open gate and parked her car in the driveway. As A. got out of her car, appellant approached her again and asked if she wanted him to wash her car. A. declined appellant's offer and entered the office with her baby.

"A.'s uncle-in-law, Raymundo, arrived at the office and asked A. if she could stay a little longer because he needed to go take a shower. Before Raymundo left, appellant asked A. while she was outside the school 'if he could sweep the business' and A. responded she didn't know and went inside to ask Raymundo. Raymundo said yes, telling A. to give appellant two dollars for the job. A. went back outside to where appellant was sweeping in front of the neighboring business and told appellant that he could sweep the front sidewalk of the school. A. went back inside the office and sat behind the desk while Raymundo left.

"A few minutes after Raymundo left and while A. sat at the desk, appellant walked in through the front door and 'asked for . . . the dustpan.' Appellant pointed toward the bathroom when he asked for the dustpan. Knowing that the dustpan was kept in the bathroom, A. stood up to get it. A. did not remember if she told appellant that she would get the dustpan, testifying on direct examination that when she stood up she said she would get the dustpan, but on cross-examination testifying that she did not tell appellant she was going to get the dustpan. At that point, A. did not see appellant's penis exposed. A. went to the bathroom to get the dustpan which was kept next to the sink. The dustpan had an upright pole and could be picked up without bending over. A. picked up the dustpan and turned back to the door to find appellant standing in the doorway to the bathroom. A. had not realized that appellant had followed her to the bathroom and felt scared and nervous when she saw that appellant's 'soft, semi-erect' penis was outside his pants, through the open zipper. A. moved the dustpan to the side towards appellant. With appellant standing in the doorway, A. could not exit the bathroom. Appellant told A., 'it was a nice bathroom or something like that.' Nervous and scared, A. felt trapped because appellant was 'too close' and A. 'was trying to think of a way out.' Appellant stepped forward, causing A. to step back and bump into the bathroom sink. Seeing an

3

opening, A. rushed out around appellant, and 'went really quickly to the back of the desk to get [her] cell phone.' Appellant was close enough to touch A. but he did not try to touch or restrain A. in the bathroom, did not tell her she could not leave, did not step in front of A. as she left, did not look at or comment about his penis, and did not say anything sexual or flirtatious to A.

"Appellant returned to the front of the office carrying the dustpan with his penis still exposed. Scared and too nervous to actually make a phone call, A. attempted to scare appellant by pretending to make a call. Appellant stood in front of A. and the desk and then walked towards the couch and A.'s baby and said to A., 'what a pretty baby.' At this point, appellant's penis was still exposed. Appellant did not say anything about his penis, did not say anything sexual or flirtatious and did not do anything to direct her attention to his penis. Appellant then walked to the front door and while opening the door put his penis back into his pants and zipped up his pants. Appellant exited and began sweeping. After appellant exited, A. immediately locked the front door and called her mother-in-law. Her mother-in-law told A. to call 911 and she did so. [Footnote omitted.]

"About 10 minutes after appellant exited and a few minutes after A. called 911, appellant began knocking on the locked front door. At that point, A. had forgotten that she owed appellant money for sweeping and that appellant still had the school's dustpan. A minute later, appellant began 'pounding' on the window and said, 'I know you are in there. I can still see your baby.' A. did not respond. About a minute later, A. then heard 'the back door being pounded on.' From where she was hiding inside a doorless, walk-in closet in the office area, A. saw through the window that appellant went back to sweeping the front sidewalk of the school and was there when the police arrived and arrested him.

"Approximately eight minutes after A. made the call to 911, the police arrived and arrested appellant. Los Angeles Police Detective Monica McPartland was assigned as the investigating officer to the case and interviewed A. later that morning. During the interview, A. 'appeared to be in shock, somewhat upset and crying, very tearful.' McPartland searched appellant's motel room, which was within walking distance of the

4

traffic school, and found 'soft' pornography and one adult magazine. McPartland testified that appellant had been released from prison on December 9, 2009, after serving time for crimes that occurred in 1982.

"**II.  Prosecution's Evidence Code Section 1108 Evidence**

"Denise Thomas testified that on March 19, 1982, at about 6:30 a.m., she was on her way to Crenshaw High School. Thomas was 14 years old at the time and was walking alone when appellant approached her. Appellant held a butcher knife to Thomas's side and told her to get inside his car. Thomas got into the car and appellant climbed over her into the driver's seat and locked the doors. Appellant drove off and began masturbating while looking for a place to stop the car.

"After parking in an alley, appellant told Thomas to pull her pants down and get into the back seat. Thomas struggled a little before complying. Appellant then got into the back seat with Thomas and raped her. After the rape, appellant drove Thomas to another location and told her to 'get out the car.' When Thomas got out, she memorized the license plate on appellant's car, wrote it down on her hand, and provided it to police.

"Thomas testified against appellant as a rape victim in the 1982 trial and another, unnamed individual testified as a rape victim as well.

"Jaide Lightfoot testified about an incident that occurred on March 19, 1982, after the incident involving Thomas had occurred. Lightfoot was 16 years old at the time and returning from lunch, on her way back to Crenshaw High School. Lightfoot was walking with another girl when appellant, sitting in a vehicle, signaled to Lightfoot and waved money that he then placed on the passenger seat. As Lightfoot looked at the money, appellant jumped out of the car, grabbed Lightfoot, and attempted to remove her pants while trying to put her into the car. Lightfoot fought back and was able to grab onto a tree which broke appellant's grasp. After losing his grip, appellant jumped back into his car and fled.

"Lightfoot testified against appellant in the 1982 trial.

5

"Along with the testimony of Thomas and Lightfoot, four certified convictions were admitted in evidence pursuant to Penal Code section 969b. The convictions included three counts of rape and one count of assault with intent to commit rape. This document was redacted to six pages in length and included the rape convictions from testifying victim, Thomas, and an assault with intent to commit rape conviction from testifying victim, Lightfoot, along with two other rape convictions involving another single, non-testifying victim.

"**III. Defense Evidence**

Appellant did not testify, and no witnesses were called on his behalf.

"**IV. Conviction and [Original] Sentence**

"The jury convicted appellant of all three counts: false imprisonment by violence (§ 236), attempted forcible rape (§§ 664/261, subd. (a)(2)), and indecent exposure with a prior conviction (§ 314, par. 1.).

"In bifurcated proceedings, the jury found to be true that appellant had a prior serious felony conviction within the meaning of section 667, subdivision (a), 11 prior 'strikes' within the meaning of section 667, subdivisions (b) through (i) and 11 prior convictions within the meaning of section 667.5, subdivision (b).

"Appellant was sentenced to 25 years to life for the attempted forcible rape charge plus five years pursuant to section 667, subdivision [(a)], for an aggregate term of 30 years to life. The trial court also sentenced appellant to 25 years to life for the false imprisonment charge and 25 years to life for the indecent exposure charge, which were both stayed pursuant to section 654." (*People v. Smith*, *supra*, B234315, pp. 2-6.)

**V. Prior Appeal and Remand for Resentencing**

Smith appealed from the judgment. This court reversed Smith's convictions for false imprisonment and attempted forcible rape based on insufficiency of the evidence, and remanded the matter to the trial court for resentencing. (*People v. Smith*, *supra*, B234315, p. 15.)

On July 25, 2013, the trial court held the resentencing hearing. On the prosecution's motion, the court dismissed the five-year prior serious felony enhancement

6

under section 667, subdivision (a)(1), and the one-year prior prison term enhancement under section 667.5, subdivision (b).  The court noted the prosecution was "proceeding on the strike priors that were found true" by the jury under the Three Strikes law.

At the resentencing hearing, Smith's counsel did not ask the trial court to dismiss a prior strike conviction in furtherance of justice under section 1385 as he did at the original sentencing hearing.[3]  Instead, Smith's counsel mentioned Proposition 36 and argued the trial court could not sentence Smith as a third strike offender because his current offense, indecent exposure after a prior lewd or lascivious act conviction (§ 314), was not a serious or violent strike.  The court pointed out Proposition 36 is not applicable to Smith's sentence due to Smith's prior convictions for rape and other enumerated sex crimes.  (§ 667, subd. (e)(2)(C)(iv).)  On appeal, Smith concedes the court was correct in its interpretation of Proposition 36.

In resentencing Smith, the trial court referenced Smith's "multiple priors including kidnap, rape, [and] a laundry list of very brutal crimes."  The court noted, during trial, it "heard the testimony from some of the prior victims, [a] 13-year-old who was raped by the defendant at knife point . . . , along with another teenager who was raped by the defendant at knife point . . . .  So his prior record is extremely serious.  The probation report indicates that he's a sexual predator."

On the remaining count for indecent exposure with a prior lewd or lascivious act conviction, a felony, the court sentenced Smith as a third strike offender to 25 years to life in prison.  Smith's counsel did not make the cruel and unusual punishment argument he raises in this appeal.

## DISCUSSION

**Cruel and Unusual Punishment**

---

[3] At the original sentencing hearing held June 30, 2011 before Judge David B. Gelfound, the same judge who presided at the July 25, 2013 resentencing hearing, the trial court denied Smith's motion to dismiss prior strike convictions in furtherance of justice under section 1385.

Smith contends his current sentence of 25 years to life for felonious indecent exposure constitutes cruel and/or unusual punishment under the California and United States Constitutions.

The Attorney General argues Smith forfeited this contention on appeal by failing to raise it in the trial court. (See *People v. Em* (2009) 171 Cal.App.4th 964, 971, fn. 5; *People v. DeJesus* (1995) 38 Cal.App.4th 1, 27.) Smith argues his trial counsel rendered ineffective assistance in not making a cruel and unusual punishment argument below. Because Smith's ineffective assistance of counsel claim requires us to address the issue on the merits in any event, we need not decide the forfeiture question. Smith's ineffective assistance of counsel claim fails because the sentence does not constitute cruel or unusual punishment, as explained below.

Smith must overcome a "considerable burden" in challenging his penalty as cruel or unusual under the California Constitution. (*People v. Wingo* (1975) 14 Cal.3d 169, 174.) "[I]n California a punishment may violate article I, section 6, of the Constitution if, although not cruel or unusual in its method, it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424.) Our Supreme Court has identified three factors for reviewing courts to consider in determining whether a sentence constitutes cruel or unusual punishment: (1) "the nature of the offense and/or the offender, with particular regard to the degree of danger both present to society"; (2) how the punishment compares with punishments for more serious crimes in the same jurisdiction; and (3) how the punishment compares with punishments for the same offense in other jurisdictions. (*Id*. at pp. 425, 426-427.)

In examining the nature of the offense and the offender, we consider "the totality of the circumstances surrounding the commission of the offense" and the characteristics of the particular defendant, including "prior criminality." (*People v. Dillon* (1983) 34 Cal.3d 441, 479.) Smith was released from incarceration on December 9, 2009, after serving time in prison for the very serious crimes he committed on multiple minor victims in March 1992—kidnapping, rape, lewd or lascivious acts. Seven-and-one-half

8

months after his release he committed the present offense, indecent exposure, a felony due to his prior lewd or lascivious act convictions. The evidence presented at trial was sufficient to show he willfully and lewdly exposed his penis in the presence of the 19-year-old female victim (§ 314), after previously staring at her breasts and "vaginal area." (*People v. Smith*, *supra*, B234315, pp. 2, 3.) The victim was frightened and shocked when Smith followed her to the bathroom, where she had gone to retrieve the dustpan, and then took a step toward her with his penis exposed. While the present offense is nonviolent, we disagree with Smith's characterization of this felony as a "minor offense" with "minimal" magnitude, especially given his history as a "sexual predator" (to quote the trial court's finding at the resentencing hearing). Based on our consideration of the nature of the offense and the offender, we find Smith's sentence of 25 years to life is not so disproportionate to the present offense that it shocks the conscience and offends fundamental notions of human dignity. (Compare *People v. Carmony* (2005) 127 Cal.App.4th 1066, 1086 ["the offense of willful failure to file a duplicate registration as a sex offender is a passive, nonviolent, regulatory offense, which causes no harm and poses no danger to the public," and a 25-years-to-life sentence is disproportionate to that offense and constitutes cruel and unusual punishment].)

Turning to the second of the three factors our Supreme Court identified in *Lynch*, a punishment may be deemed disproportionate or "suspect" where more serious crimes in the same jurisdiction are "punished less severely than the offense in question." (*In re Lynch*, *supra*, 8 Cal.3d at p. 426.) In comparing Smith's punishment with punishments for more serious crimes committed in California, we must look at sentences for other recidivists, not first-time offenders. (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1512.) A defendant sentenced as a third strike offender for a crime more serious than felonious indecent exposure would not receive a lighter sentence than Smith. Thus, Smith cannot demonstrate his 25-years-to-life sentence is disproportionate when compared to sentences imposed and upheld for more serious third strike offenses in California.

9

In comparing Smith's punishment with punishments for the same offense in other jurisdictions—the third *Lynch* factor—we note "California's [Three Strikes] scheme is part of a nationwide pattern of statutes calling for severe punishments for recidivist offenders." (*People v. Cline* (1998) 60 Cal.App.4th 1327, 1338.) Smith argues California's Three Strikes law is more severe and lacks the limitations of recidivist statutes in other states. He asserts, "the habitual offender provisions in most other states require the <u>current</u> felony be of an aggravated type, require the prior convictions to have been brought and tried separately, or else provide for an aggravated term far less than that imposed here." "That California's punishment scheme is among the most extreme does not compel the conclusion that it is unconstitutionally cruel or unusual. This state constitutional consideration does not require California to march in lockstep with other states in fashioning a penal code." (*People v. Martinez*, *supra*, 71 Cal.App.4th at p. 1516.)

Smith's Three Strikes sentence of 25 years to life for indecent exposure with a prior lewd or lascivious act conviction does not shock the conscience and offend fundamental notions of human dignity. Felonious indecent exposure is not "an offense so minor [like willful failure to file a duplicate registration as a sex offender] that it cannot trigger the imposition of a recidivist penalty without violating the cruel and/or unusual punishment prohibitions of the United States and California Constitutions." (*People v. Carmony*, *supra*, 127 Cal.App.4th at p. 1071.) Smith's argument his sentence is punishment for his prior (1982) crimes alone, and therefore in violation of the federal and state constitutional prohibitions against double jeopardy, is without merit.

Based on the foregoing analysis, we also reject Smith's challenge to his sentence under the Eighth Amendment to the United States Constitution, which "forbids cruel and unusual punishments" and "contains a 'narrow proportionality principle' that 'applies to noncapital sentences,'" prohibiting "extreme sentences that are 'grossly disproportionate' to the crime." (*Ewing v. California* (2003) 538 U.S. 11, 20, 23.) "[T]he principles developed by our [Supreme C]ourt [regarding the ban on cruel and unusual punishment] are similar to those developed by the United States Supreme Court." (*People v. Barrera*

10

(1993) 14 Cal.App.4th 1555, 1566, fn. 7.)  In support of his challenge under the Eighth Amendment, Smith makes arguments we already rejected above—that his sentence "is completely disproportionate to the crime he committed and dishonors all notions of human decency . . . , or he is being punished again for the crimes he committed in the past, which violates the Fifth Amendment's prohibition against double jeopardy."

**Trial Court's Discretion to Dismiss a Prior Strike**

Smith contends the trial court abused its discretion when it sentenced him as a third strike offender under the Three Strikes law instead of exercising its discretion to dismiss a prior strike conviction in furtherance of justice under section 1385.

In *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, the California Supreme Court held, "in cases arising under" the Three Strikes law, a trial court has limited "discretion to strike prior felony conviction allegations in furtherance of justice pursuant to section 1385[, subdivision ](a)." (*Id.* at pp. 504, 530, fn. 13.)  Our Supreme Court also has explained, "any failure on the part of a defendant to invite the court to dismiss under section 1385 following *Romero* waives or forfeits his or her right to raise the issue on appeal." (*People v. Carmony* (2004) 33 Cal.4th 367, 375-376.)  Smith did not ask the trial court to dismiss a strike when the court sentenced him for felonious indecent exposure.  Thus, Smith has forfeited this contention on appeal.  Briefly addressing the issue on the merits to preclude an ineffective assistance of counsel claim, we conclude the trial court did not abuse its discretion in sentencing Smith as a third strike offender.

In *People v. Williams* (1998) 17 Cal.4th 148, 161, the California Supreme Court concluded, when deciding whether to strike a prior conviction under section 1385, the trial court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams*, *supra*, 17 Cal.4th at p. 161.)  In reviewing the trial court's decision for abuse of

11

discretion, we determine whether it "'falls outside the bounds of reason'" under the law and the facts of the case. (*Id*. at p. 162.) A defendant who "seeks reversal must demonstrate that the court's decision was irrational or arbitrary." (*People v. Myers* (1999) 69 Cal.App.4th 305, 309-310.)

The trial court did not abuse its discretion in sentencing Smith as a third strike offender. Smith cannot demonstrate he falls outside the spirit of the Three Strikes law. Smith asserts, at 58 years old (at the time of the resentencing), he "is no longer at an age that involves a high risk of reoffending, and any argument that society has an interest in incarcerating him until he is 80 years old (and then only releasing him after a parole hearing) is simply absurd." We disagree that the trial court sentenced Smith in an absurd, irrational or arbitrary manner. Seven-and-one-half months after he was released from a lengthy prison sentence for very serious sex crimes, Smith willfully and lewdly exposed his penis in the presence of a 19-year-old female victim and approached her. This offense is a felony due to Smith's prior lewd and lascivious act convictions. The interests of justice did not require the court to dismiss a prior strike conviction.

Smith asserts, in resentencing him, the trial court should have taken his "changed circumstances into consideration"—the fact this court reversed his false imprisonment and rape convictions—and given him a lighter sentence. Not so. Felonious indecent exposure is not a trivial offense, and the trial court did not abuse its discretion in sentencing Smith as a third strike offender.

**DISPOSITION**

The judgment is affirmed.

12

NOT TO BE PUBLISHED.

CHANEY, Acting P. J.

We concur:

JOHNSON, J.

MILLER, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.