Filed 7/21/16  P. v. Pangborn CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B264258 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA089421) |
| v. | |
| DAVID PANGBORN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael D. Carter, Judge.  Reversed in part, remanded with directions, and affirmed in part.

Rachel Lederman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Michael R. Johnsen and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant David James Pangborn appeals from the judgment entered following a jury trial that resulted in his conviction of corporal injury to cohabitant (Pen. Code, § 273.5, subd. (a); count 1);[1] criminal threats (§ 422, subd. (a); count 2); and assault by means likely to produce great bodily injury (§ 245, subd. (a)(4); count 3). The jury found true the allegations he had suffered two prior serious felony convictions (§ 667, subd. (a)(1)) that also qualified as strikes under the Three Strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and he had served a prior prison term (§ 667.5, subd. (b)). The jury found not true the allegation that during the commission of the count 2 offense defendant used a deadly or dangerous weapon (knife; § 12022, subd. (b)(1)).

The trial court sentenced defendant to prison on count 1 to six years, or double the three-year middle term, and, consecutively on count 2, to 25 years to life, plus a one-year prior prison term and a five-year prior serious felony enhancement. The court suspended imposition of sentence on count 3 (§ 654). Thus, the aggregate term was 37 years to life.

Defendant contends his sentence must be reversed as cruel or unusual (or both) punishment (U.S. Const, 8th Amend.; Cal. Const., art. I, §17).[2] We find no constitutional infirmity. The fatal fallacy of this claim lies in his faulty premise that his sentence is

---

[1]    All further section references are to the Penal Code.

[2]    Respondent contends defendant forfeited his claim of unconstitutionality by failing to raise the claim below. We disagree. The record reflects defendant moved to strike his 2002 robbery conviction (but not his 2012 one) in the interests of justice (§1385; *People v. Superior Court* (*Romero*) 13 Cal.4th 497). Respondent's opposition expressly addressed the issue of cruel and unusual punishment as lacking merit. Further, at the hearing, defense counsel argued in view of "the very shaky state of the evidence," "the equities and fairness [considerations] would not seem to point toward . . . a sentence" of 25 years to life. Referring to "defendant's constitutional rights [under the] Eighth Amendment," the court asked defense counsel: "[I]s this cruel and unusual punishment to sentence the defendant to 25 to life based on his conduct?" After commenting that the court "even considered . . . whether or not this would be deemed cruel and unusual punishment," the trial court denied the *Romero* motion. Under these circumstances, we conclude that requiring defendant himself to raise his cruel or unusual (or both) punishment constitutional claims below would be a futile gesture and imprudently elevating form over substance. We decline to do so.

2

unconstitutionally lengthy in view of the relatively nonviolent and nonserious nature of his current crimes. The predominate portion of his sentence, which consists of an indeterminate term of 25 years to life, however, was imposed based on his recidivist violent and serious criminal conduct and is mandated under the Three Strikes law. In *Ewing v. California* (2003) 538 U.S. 11 (*Ewing*), the United States Supreme Court upheld the Three Strikes law mandate of a 25-year-to-life sentence against a challenge of cruel and unusual punishment (U.S. Const., 8th Amend.). (*Ewing*, at pp. 30-31.) Under the circumstances of this case, we have no occasion to revisit that holding. Further, his sentence is not cruel or unusual punishment in violation of the state Constitution (Cal. Const., art. I, § 17).

Nonetheless, we reverse defendant's sentence and remand the matter for resentencing for other reasons. We invited the parties to file supplemental briefing on these issues: Did the trial court commit unauthorized sentencing error in staying imposition of sentence on count 3; if so, should defendant's sentence be reversed and the matter remanded for resentencing; and, if so, should the trial court impose a second strike, rather than a third strike, sentence, because the jury was not asked to find and did not find defendant used a firearm or personally inflicted great bodily injury on the victim in committing the count 3 offense? Additionally, did the trial court commit unauthorized sentencing error in dismissing the second five-year prior felony, and, if so, must the second five-year serious felony be imposed when the trial court recalculates his sentence on remand? We have received their responses.

In view of the parties' concession, which we find well founded, we reverse defendant's sentence and remand the matter for resentencing. We direct the trial court to vacate its order suspending imposition of sentence on count 3, impose a sentence on defendant as a second striker, and suspend execution of that sentence. The trial court also is directed to vacate its order dismissing the second five-year prior felony and to impose the five-year prior felony enhancement. We otherwise affirm the judgment.

3

BACKGROUND

Maria F. started dating defendant in November 2013, and shortly afterward they moved in together. They also used crystal methamphetamine together. Defendant was physically abusive to her.

On February 13, 2016, defendant and Maria F. stayed overnight with Randy Ramirez and Ashley, his girlfriend, at Ramirez's house. For Valentine's Day, the next day, defendant and Mara F. planned to go out for dinner and watch a movie with the other couple.

In the morning, defendant and Maria F. argued outside their upstairs bedroom. As defendant pulled her into the bathroom, he told her, "Fuck you bitch, this is going to be your fucking valentine." He slapped her face and hit her legs, back, and head with a closed fist. He also choked her with both hands until she blacked out. Maria F. crouched in a corner and tried to protect herself. She did not scream because of his threat to kill her.

When Ramirez knocked on the door, defendant opened the door. He momentarily grabbed Maria F.'s hair, but she was able to flee downstairs. Ramirez told defendant to tell Maria F., who was crying and in pain, to go outside. Maria F. and defendant then sat on a bench on the front porch and resumed arguing. He hit her repeatedly. At some point, he choked her with one hand around her neck. Maria F. again passed out. Defendant threatened Maria F. that she had "better not do nothing stupid because you know what's going to happen" and he would kill her.[3]

He told Maria F. to take off her shoes to prevent her from leaving. After she complied, he threw them down on the porch. Saying she was not going anywhere but needed an Advil, Maria F. grabbed her shoes and went inside. While defendant was upstairs, Maria escaped using a side door.

---

[3]     The jury rejected Maria F.'s testimony that defendant held a knife against her stomach by finding not true the knife allegation (§ 12022, subd. (b)(1)).

4

At the hospital, Dr. Jeremy Williams determined that Maria F. had suffered blunt force trauma to the left side of her body, face, upper arms, biceps, lower back, and neck region. There were also signs she might have been choked because her neck was tender.

Maria F., who was afraid, changed her phone number about five times. She did not stay in one place because defendant "let people know to hurt me if they found me." A male known as "Oso" related that defendant instructed him to kill her to stop her from going to court.

As defendant awaited trial, the Los Angeles County Sheriff's Department confiscated a handwritten note from his cell that read: "As all know I am about to go to trial next month for domestic and criminal threats. Now this bitch Candy is testifying on me and I'm going to beat it. But the point is this. I personally told Oso about this bitch, her name. Showed him a picture so he knew what was up with this bitch. I even told him if he runs into her out there to do me the favor and handle it."

At trial, the defense asked Leticia R., Maria F.'s mother, whether Maria F. was a truthful person. Leticia testified that it "depends" and once Maria F. lied about Leticia to Social Services. She also lied about coming "right back" home, because she would "take off for two to three months."

Defendant testified that he and Maria F. used methamphetamine while staying at the Burbank house. On the morning of February 14, 2013, "Martha," a good friend, came over, because he owed her money. As she slapped his face, she asked, "Who is this bitch?" Maria F. responded, "Who are you calling a bitch?" A physical fight broke out and ceased only when defendant and Ramirez separated the women. Later, Maria F. repeatedly asked defendant for drugs, and he refused. Angry, she threatened to call the police and report falsely that he hit her. Defendant denied threatening or striking Maria F.

Ramirez testified that during the fight that day, Martha, a "big girl," punched Maria F. several times with closed fists. He denied ever seeing defendant threaten, slap, or choke Maria F.

5

DISCUSSION

Defendant contends his prison sentence of 37 years to life is cruel and unusual punishment under the federal Constitution and cruel or unusual punishment under the state Constitution. When viewed in context, it becomes evident that his sentence is neither cruel or unusual (or both) punishment.

1. *Sentence Not Cruel and Unusual Punishment Under Federal Constitution*

Contrary to defendant's claim, his sentence does not constitute cruel and unusual punishment proscribed by the federal Constitution (U.S. Const., 8th Amend.). Defendant's aggregate sentence consists of six years, or double the three-year middle term, on count 1; a sentence of 25 years to life on count 2; a five-year prior serious felony enhancement; and a one-year prior prison term enhancement. Although his claim is that his aggregate sentence is unconstitutional, the gist of his claim focuses on the 25-year-to-life component of the sentence. His constitutional claim is without merit, because he fails to apprehend that the principal portion of his sentence, i.e., 25 years to life, is not based solely on his conviction in count 2 for making criminal threats (§ 422, subd. a)) but also on his recidivist violent and serious criminal conduct reflected in his prior two convictions for robbery (§ 211), which also constitute strikes under the Three Strikes law.

The United States Supreme Court has upheld the Three Strikes law mandate of a 25-year-to-life sentence against a challenge of cruel and unusual punishment (U.S. Const., 8th Amend.) where the triggering offense was the nonviolent theft of three golf clubs valued at $1,200. (*Ewing*, *supra*, 538 U.S. at pp. 28, 30-31.) Moreover, defendant acknowledges "California Courts have repeatedly denied challenges to convictions under the Three Strikes Law as cruel and unusual" and, in particular, "a number of cases have held that a 25-to-life sentence under the Three Strikes Law was not cruel and unusual punishment under the Eighth Amendment." He contends the "individualized circumstances" of this case, however, compel a contrary conclusion. We disagree.

Defendant challenges the victim's trial testimony as "dubious, at best, and totally contradicted by the defense, at worst," and asserts, "'because the penalty is imposed for the current offense, the focus must be on the seriousness of that offense. Past offenses do

6

not themselves justify imposition of an enhanced sentence for the current offense.' (*People v. Carmony* (2005) 127 Cal.App.4th 1066, 1079 [*Carmony II*].)  In other words, all care must be given to ensure that [defendant] is not 'actually being punished again for his prior offenses.'  (*Ibid.*)"

Initially, we point out that defendant misapprehends the standard of review. "[W]e review the entire record in the light most favorable to the judgment to determine whether it contains evidence that is reasonable, credible, and of solid value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.]  'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.'  [Citation.]  Unless it describes facts or events that are physically impossible or inherently improbable, the testimony of a single witness is sufficient to support a conviction.  [Citation.]"  (*People v. Elliott* (2012) 53 Cal.4th 535, 585.)  In short, it was for the jury to determine credibility, and, in this instance, the jury credited the testimony of the victim over defendant's version.  That the jury found untrue the use of a knife allegation and the court found the victim did not suffer great bodily injury do not serve to undermine the jury's guilty verdicts.

Other than contesting the sufficiency of the evidence to support his convictions, defendant does not describe any factual circumstances that would compel the conclusion that his sentence constitutes cruel and unusual punishment.[4]

---

[4]  Defendant compares the Three Strikes law with recidivist statutes in other states and draws the conclusion that "California is alone in permitting the commission of any type of current felony, including extremely minor felonies, to be of an aggregated type" and "requires such rigid application and lengthy imprisonment, regardless of the nature of the offense or circumstances in mitigation."  However, he "recognizes that it has been held that even if California statutes impose the longest sentences in the nation, it does not mean defendants' punishment is cruel and unusual.  (*People v. Martinez* (1999) 71 Cal.App.4th 1502, 1516.)"  He nonetheless invites this court to depart from that holding. We decline.  The circumstances here do not warrant such revisiting.

In *In re Coley* (2012) 55 Cal.4th 524 (*Coley*), our Supreme Court noted "[t]he lead opinion in *Ewing* (authored by Justice O'Connor) . . . did not eliminate the possibility that some triggering offense, although designated a felony under California law, might be so minor and unrelated to the goal of deterring recidivism that a 25-year-to-life sentence would be 'grossly disproportionate' and constitute cruel and unusual punishment under the Eighth Amendment, even when imposed upon a defendant with a serious criminal record." (*Id.* at p. 529.)

In urging the individual circumstances here present such an instance of unconstitutionality, defendant relies on *Carmony II*. His reliance is misplaced. As noted in *Coley*, that case involved "a two-to-one decision that a 25-year-to-life sentence under the Three Strikes law constituted cruel and/or unusual punishment, in violation of the federal and state Constitutions, as applied to a defendant whose triggering offense was the failure to annually update his sex offender registration within five working days of his birthday. The defendant in *Carmony II* had properly registered as a sex offender at his current address one month before his birthday, had continued to reside at the same address throughout the relevant period, had remained in contact with his parole agent, and was arrested at that same address by his parole agent one month after his birthday. Observing that "because defendant did not evade or intend to evade law enforcement officers, his offense was the most technical and harmless violation of the registration law we have seen" ([*Carmony II*, *supra*,] 127 Cal.App.4th at p. 1078), the majority opinion in *Carmony II* concluded that, notwithstanding the defendant's record of serious prior offenses, the imposition of a 25-year-to-life sentence was grossly disproportionate to the gravity of the defendant's offenses and violated the constitutional prohibition of cruel and/or unusual punishment." (*Coley*, *supra*, 55 Cal.4th at pp. 529-530.)

Although concluding "we need not and should not rest our holding upon a determination that the Court of Appeal opinion in *Carmony II* was wrongly decided," our Supreme Court held in *Coley* that a sentence of 25 years to life imposed on a defendant who was convicted of failing to update his sex offender registration within five working

8

days of his birthday was not cruel and unusual punishment.  (*Coley*, *supra*, 55 Cal.4th at p. 530.)

The Court reasoned:  "The conduct of petitioner in this case, as found by the trial court, is clearly distinguishable in a significant respect from the conduct of the defendant in *Carmony II*.  Unlike the defendant in *Carmony II*, who had very recently registered at his current address and who the Court of Appeal found 'did not evade or intend to evade law enforcement officers' (*Carmony II*, *supra*, 127 Cal.App.4th at p. 1078), the trial court in this case, in refusing to strike any of petitioner's prior convictions and in imposing a 25-year-to-life sentence under the Three Strikes law, found that petitioner's triggering offense was not simply a minor or technical oversight by a defendant who had made a good faith effort to comply with the sex offender registration law.  Rather, the court found that petitioner had never registered as a sex offender at his current address and had knowingly and intentionally refused to comply with his obligations under the sex offender registration law. [¶] Petitioner's conduct, as found by the trial court, demonstrated that, despite the significant punishment petitioner had incurred as a result of his prior serious offenses, he was still intentionally unwilling to comply with an important legal obligation, and thus his triggering criminal conduct bore both a rational and substantial relationship to the antirecidivist purposes of the Three Strikes law.  Given that relationship and the extremely serious and heinous nature of petitioner's prior criminal history, we conclude that, under *Ewing*, *supra*, 538 U.S. 11, the imposition of a 25-year-to-life sentence does not constitute cruel and unusual punishment under the circumstances of this case." (*Coley*, *supra,* 55 Cal.4th at pp. 530-531.)

The factual circumstances of this case align with those in *Coley* rather than *Carmony II* in the sense that defendant's current conviction in count 2 for making criminal threats did not arise from an inadvertent evasion of the law but rather was the product of defendant's conscious and deliberate commission of a crime, which conduct was not deterred by his prior incarceration for his recidivist violent and serious criminal conduct.  Further, this was not simply an isolated instance of a spontaneous outburst on the part of defendant.  Rather, his criminal threats against Maria F. reflect defendant's

9

criminal way of life. While in jail awaiting trial, defendant attempted to cause a third party, Oso, to kill the victim to prevent her from testifying in court against defendant.

    2. *Sentence Not Cruel or Unusual Punishment Under State Constitution*

Defendant contends his sentence is grossly disproportionate in violation of the cruel or unusual proscription of the California Constitution (Cal. Const., art. I, § 17). [5] He has failed to demonstrate any unconstitutional disproportionality.

"To determine whether a sentence is cruel or unusual under the California Constitution as applied to a particular defendant, a reviewing court must examine the circumstances of the offense, including motive, the extent of the defendant's involvement in the crime, the manner in which the crime was committed, and the consequences of the defendant's acts. The court must also consider the personal characteristics of the defendant, including his or her age, prior criminality, and mental capabilities. [Citation.] If the penalty imposed is 'grossly disproportionate to the defendant's individual culpability' [citation], so that the punishment ""'shocks the conscience and offends fundamental notions of human dignity'"" [citation], the court must invalidate the sentence as unconstitutional." (*People v. Lucero* (2000) 23 Cal.4th 692, 739-740 (*Lucero*).)

Defendant fails to point out any factual circumstances that would compel the conclusion that a sentence of 25 years to life in this instance is so shocking and offensive that such punishment constitutes cruel or unusual punishment. Maliciously, defendant cornered Maria F., beat her with a closed fist, and choked her twice until she became unconscious. These acts of violence and brutality were accompanied by defendant's threats to kill her. In short, 25 years to life for making these criminal threats "is not 'grossly disproportionate to the defendant's individual culpability' [citation], nor does it ""'shock[] the conscience and offend[] fundamental notions of human dignity.'"" [Citation.]" (*Lucero*, *supra*, 23 Cal.4th at. p. 740.)

---

[5]    Defendant, who admittedly was almost 33 years old, was not a juvenile at the time of his crimes. We therefore do not discuss his citation and reliance on United States Supreme Court cases involving a juvenile, which are factually inapplicable.

10

3.  *Reversal of Sentence and Remand for Further Proceedings Mandated*

In response to our invitation for supplemental briefing, the parties concede, as to count 3, the trial court committed unauthorized sentencing error (*People v. Scott* (1994) 9 Cal.4th 331, 354) by suspending imposition of sentence; defendant's sentence must be reversed; the trial court must impose a second strike sentence on count 3 (see *People v. Banuelos* (2005) 130 Cal.App.4th 601, 605; see generally *People v. Johnson* (2015) 61 Cal.4th 674, 680-681, 689-690); and the court must then stay execution of that sentence (§ 654; *People v. Jones* (2012) 54 Cal.4th 350, 353).  As for count 2, the parties concede that the trial court also committed unauthorized sentencing error by dismissing the second five-year prior serious felony (§1385, subd. (b); *People v. Garcia* (2008) 167 Cal.App.4th 1550, 1560-1561) and when the trial court recalculates defendant's sentence on remand, the court must impose the second five-year prior serious felony enhancement.

## DISPOSITION

Defendant's sentence is reversed, and the matter is remanded for resentencing. The trial court is directed to impose a second strike on count 3 and then stay execution of that sentence.  The trial court is also directed to impose the second five-year prior serious felony enhancement.  In all other respects the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.

11