Filed 2/23/24  P. v. Powell CA1/5
Review denied 6/12/24; reposted with Supreme Court order and statement

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DIANTAY POWELL,<br><br>        Defendant and Appellant. | A167066<br><br>(Alameda County Super. Ct.<br> No. 171602A) |

Defendant Diantay Powell appeals from the trial court's denial of his postjudgment motion under Penal Code[1] section 1203.01.  In that motion, he requested a *Franklin*/*Cook*[2] proceeding to preserve evidence for a future youth parole hearing.  The court denied the motion on the ground that Powell was statutorily ineligible for a parole hearing because he was 18 years old at the time of his offenses and was sentenced to life without the possibility of parole (LWOP).  Powell contends that his exclusion from youth offender parole consideration violates his right to equal protection under the state and

---

[1] All further statutory references are to the Penal Code.

[2] (*People v. Franklin* (2016) 63 Cal.4th 261, 269 (*Franklin*) [youth offender parole hearings require record of mitigating evidence tied to the defendant's youth]; *In re Cook* (2019) 7 Cal.5th 439, 452 (*Cook*) [same].)

1

federal Constitutions and constitutes cruel or unusual punishment under the state Constitution and the Racial Justice Act (RJA). We disagree and affirm.

## I. BACKGROUND

In 2016, a jury convicted Powell of first degree murder with a multiple murder special circumstance as to one victim and second degree murder as to another victim. The jury also found true allegations that Powell personally discharged a firearm during the commission of each offense, causing death or great bodily injury. Powell was 18 years old at the time he committed the murders, and the victims he shot were teenage girls. (*People v. Powell* (Dec. 15, 2017, A149038) [nonpub. opn.].) Powell was sentenced to LWOP plus 65 years to life. In Powell's appeal from that judgment, this court remanded the matter for the trial court to exercise its newfound discretion to strike the firearm enhancement but otherwise affirmed. (*Id.* at pp. 6–7.) On remand, the trial court struck the firearm enhancement and resentenced Powell to LWOP plus 40 years to life.

In 2022, Powell filed a section 1203.01 motion seeking a *Franklin/Cook* proceeding so he could preserve mitigating evidence for a future youth offender parole hearing. The motion argued that the exclusion of 18- to 25-year-old offenders sentenced to LWOP from youth offender parole consideration violated Powell's right to equal protection as well as the state Constitution's ban on cruel or unusual punishment. The trial court denied the motion on the ground that section 3051 expressly excludes from youth offender parole consideration offenders who were 18 years or older at the time of their offense and sentenced to LWOP. In doing so, the court rejected Powell's arguments that section 3051 violated equal protection or the ban against cruel or unusual punishment.

Powell timely appealed.

## II.  DISCUSSION

A.  Denying a Youth Offender Parole Hearing to Young Adult Offenders Like Powell Does Not Violate Equal Protection.

Under section 3051, juveniles sentenced to LWOP are eligible for a youth offender parole hearing after 25 years of incarceration.  (§ 3051, subd. (b)(4).)  Likewise, young adults between the ages of 18 and 25 who are sentenced to 25 years to life are eligible for a youth offender parole hearing after 25 years.  (*Id.*, subd. (b)(3).)  But young adults sentenced to LWOP like Powell are ineligible for such a hearing.  (*Id.*, subd. (h).)

Powell contends section 3051, subdivision (h) violates equal protection because there is no rational basis for distinguishing between young adult offenders with respect to their eligibility for a youth offender parole hearing based solely on their sentence.  After independently reviewing Powell's equal protection argument, we disagree.  (*People v. Sands* (2021) 70 Cal.App.5th 193, 202 (*Sands*).)

The federal and state Constitutions " 'guarantee all persons the equal protection of the laws.' "  (*People v. Acosta* (2021) 60 Cal.App.5th 769, 778 (*Acosta*).)  This means persons who are similarly situated for the purposes of the law challenged must receive like treatment unless there is a rational reason for different treatment.  (*Ibid.*)  The equal protection analysis has two steps:  "First, we consider whether ' "the state has adopted a classification that affects two or more similarly situated groups in an unequal manner." '  [Citation.]  The groups need not be similar in all respects but must be similarly situated for the purposes of the challenged law.  [Citation.]  Second, if two similarly situated groups have been identified and no suspect class or fundamental rights are at issue, we must decide whether there is any

3

rational basis to support treating the groups differently." (*Sands*, *supra,* 70 Cal.App.5th at p. 202.)

"[E]qual protection of the law is denied only where there is no 'rational relationship between the disparity of treatment and some legitimate governmental purpose.' " (*People v. Turnage* (2012) 55 Cal.4th 62, 74.) "We must accept any plausible rational basis without questioning its wisdom, logic, persuasiveness, or fairness, and regardless of whether the Legislature ever articulated it." (*Sands*, *supra*, 70 Cal.App.5th at p. 204.)

As explained below, we reject Powell's equal protection challenge because there is a rational basis for treating young adults like Powell who have been sentenced to LWOP differently than other young adult offenders.

1. *We Assume, Without Deciding, That Young Adult LWOP Offenders Are Similarly Situated to Other Young Adult Offenders.*

Powell contends that for purposes of section 3051, young adult offenders sentenced to LWOP are similarly situated to young adult offenders not sentenced to LWOP. Powell relies on *People v. Hardin* (2022) 84 Cal.App.5th 273, 285 (*Hardin*), which reasoned that both young adult groups are similarly situated because they committed their crimes before their brains were fully developed and before they reached emotional or cognitive maturity in their judgment and decision-making. But other appellate districts have reached a contrary conclusion. (See, e.g., *People v. Jackson* (2021) 61 Cal.App.5th 189, 199 (*Jackson*) [finding the two groups not similarly situated for purposes of section 3051]; but see *Acosta, supra*, 60 Cal.App.5th at p. 779 [finding the two groups similarly situated for purposes of section 3051].) We, however, need not wade into this disagreement because we find a rational basis for differential treatment.

4

## 2. *A Rational Basis Exists for Treating Young Adult LWOP Offenders and Young Adult Non-LWOP Offenders Differently.*

Powell acknowledges that most courts of appeal, including this division, have found a rational basis for distinguishing between young adult LWOP offenders and young adult non-LWOP offenders. (See, e.g., *Sands, supra,* 70 Cal.App.5th 193; *People v. Morales* (2021) 67 Cal.App.5th 326; *Jackson, supra,* 61 Cal.App.5th 189; *Acosta, supra* 60 Cal.App.5th 769; *In re Williams* (2020) 57 Cal.App.5th 427.) Nonetheless, Powell argues that based on section 3051's goal—to provide young adults a meaningful opportunity for parole based on youth-related mitigating factors—"there is no plausible basis for distinguishing between same-age offenders based solely on the crime they committed." Relying heavily on *Hardin*—the one court of appeal that has found section 3051's distinction between young adults with LWOP and non-LWOP sentences violative of equal protection—Powell argues that the relative culpability tied to crimes like special-circumstances murder that result in a mandatory LWOP sentence and crimes like murder without a special-circumstances finding, do not establish a rational basis for differential treatment. (*Hardin, supra,* 84 Cal.App.5th at p. 288.) We, however, join with *People v. Ngo* (2023) 89 Cal.App.5th 116 (*Ngo*) in rejecting *Hardin* and reaffirm our holding in *Sands* finding a rational basis for treating young adult offenders sentenced to LWOP differently than those who are not under section 3051.[3]

As an initial matter, we agree with *Ngo* that "cutting off the most culpable youthful offenders from parole entirely" does not appear to be "inconsistent with the goals of section of section 3051." (*Ngo, supra,* 89

---

[3] The California Supreme Court has granted review in *Hardin* and *Ngo*.

5

Cal.App.5th at p. 125.)  As *Ngo* explained, section 3051 "*is,* in part, a sentencing statute" because it "does not make all youth offenders eligible for parole at the same point in their incarceration" even though they "have been simultaneously maturing and outgrowing their youthful impulses."  (*Ngo*, at p. 125, italics in original.)  For example, section 3051 distinguishes between young adult offenders sentenced to a determinate term, an indeterminate term of less than 25 years, and an indeterminate term of 25 years to life.  (*Ngo*, at p. 125.)  Under section 3051, each of these three groups is eligible for a parole hearing at a different time.  (*Ngo*, at p. 125.)  Thus, section 3051 provides young adults with a meaningful opportunity for parole based on youth-related mitigating factors notwithstanding its exclusion of young adults sentenced to LWOP ("the most culpable youth offenders").  (*Ngo*, at p. 125.)

In any event, we are not persuaded by *Hardin* that relative culpability is not a rational basis for treating young adults sentenced to LWOP differently under section 3051.  According to *Hardin*, relative culpability cannot serve as a rational basis for differential treatment because section 3051 allows young adults "who have committed multiple violent crimes (albeit not special-circumstance murder) and were sentenced to a technically parole-eligible indeterminate state prison term that is the functional equivalent of life without parole" to obtain a parole hearing.  (*Hardin, supra,* 84 Cal.App.5th at p. 289.)  According to *Hardin*, "[w]hile we must accept any gross generalizations the Legislature may seem to have made when conducting rational basis review [citation], the exclusion of young adult offenders sentenced to life without parole was a deliberate and focused choice, not an inadvertent consequence of broadly worded legislation."  (*Id*. at p. 290.)  But as we explained in *Sands*, "the Legislature may rationally treat

6

[non-LWOP] offenders . . . less harshly because it deems their underlying crimes, such as first-degree murder, less grave than special circumstance murder." (*Sands, supra*, 70 Cal.App.5th at p. 204.)  Indeed, "special circumstance multiple murder 'carries a mandatory sentence of LWOP or death (§ 190.2, subd. (a)), which are the harshest penalties available under our penal system and are reserved for crimes of the most heinous nature.' " (*Acosta, supra*, 60 Cal.App.5th at p. 780.)  Because " '[t]he Legislature rationally judged this crime to be more severe and more deserving of lifetime punishment than nonspecial circumstance first degree murder,' " it could also rationally conclude that young adults convicted of that crime to be undeserving of parole.  (*Ibid.*)

Hardin's claim that "a technically parole-eligible indeterminate state prison term" may be "the functional equivalent of life without parole" does not support a contrary conclusion.  (*Hardin, supra*, 84 Cal.App.5th at p. 289.)  As *Ngo* correctly noted, "the Legislature could rationally distinguish between [youthful] offenders with de jure and de facto LWOP sentences" because a "de jure LWOP sentence provides a bright-line test."  (*Ngo, supra*, 89 Cal.App.5th at pp. 126–127.)  Indeed, "using a special circumstance as a bright-line test of culpability is well-established."  (*Ibid.*)  Thus, "[t]he Legislature's distinction is not irrational simply because *some* offenders sentenced to life without the possibility of parole are arguably less culpable than *some* offenders receiving lesser sentences."  (*Sands, supra*, 70 Cal.App.5th at pp. 204–205.)

Finally, *Hardin* ignores that equal protection "allows not only *incremental* regulation, but also *incomplete* regulation."  (*Ngo, supra,* 89 Cal.App.5th at p. 126, italics in original.)  " 'A classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends" ' [citations], or 'because it may be "to some extent both underinclusive

7

and overinclusive" ' [citations]. Consequently, any plausible reason for distinguishing between [two classes] need not exist in every scenario in which the statutes might apply." (*Johnson v. Dept. of Justice* (2015) 60 Cal.4th 871, 887.) Thus, the Legislature could choose to exclude young adults sentenced to LWOP from the relief otherwise available to other young adult offenders under section 3051 without jeopardizing the entire remedial scheme. (*Ngo*, at p. 126.)

We therefore decline to follow *Hardin* and reaffirm our conclusion in *Sands* that there is a rational basis for treating young adults sentenced to LWOP and other young adult offenders under section 3051 differently.

B. <u>Denying a Parole Hearing to Young Adult LWOP Offenders is Not Cruel or Unusual Punishment.</u>

Powell next argues that section 3051 constitutes cruel or unusual punishment because a LWOP sentence is disproportionately severe for young adults in comparison to older adults. Powell further contends that a mandatory LWOP sentence is too severe because it does not allow the trial court to consider youth-related mitigating circumstances. Again, we disagree and hold, consistent with other courts of appeal, that the denial of a youth offender parole hearing to young adults sentenced to LWOP does not constitute cruel or unusual punishment.

Article I, section 17 of the California Constitution prohibits the "inflict[ion]" of "[c]ruel or unusual punishment." In doing so, it " ' "independently lays down the same prohibition" ' as the Eighth Amendment." (*People v. Edwards* (2019) 34 Cal.App.5th 183, 191 (*Edwards*).) Thus, a punishment violates this prohibition only if it is "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch*

(1972) 8 Cal.3d 410, 424.) "[I]n making this determination," courts "assess . . . (1) the nature of the offense and the offender, and the degree of danger posed to society; (2) a comparison with sentences for more serious offenses under California law; and (3) a comparison with sentences imposed by other states for the same offense." (*Edwards*, at p. 191*.)*

In arguing that depriving young adults sentenced to LWOP of the opportunity for a parole hearing violates the ban on cruel or unusual punishment, Powell urges us to apply the reasoning of *Miller v. Alabama* (2012) 567 U.S. 460 (*Miller*). There, the high court held that a mandatory LWOP sentence constitutes cruel and unusual punishment when imposed on juveniles. (*Id*. at pp. 474–477.) Claiming that young adults "share key characteristics with those under the age of 18," Powell contends that he should have the same opportunity for a parole hearing as juveniles under section 3051. Those shared characteristics include a heightened vulnerability to outside influences, the lack of a fully developed brain, and a greater likelihood of exhibiting extreme recklessness, impulsivity, and risk-taking.

We, however, decline to extend *Miller* to young adults like Powell. As the United States Supreme Court has acknowledged, "[w]hile drawing the line at 18 is subject to the objections always raised against categorical rules, that is the point where society draws the line for many purposes between childhood and adulthood" and is for example, "the age at which the line for death eligibility ought to rest." (*Roper v. Simmons* (2005) 543 U.S. 551, 554 (*Roper*).) *Miller* did not change this. Indeed, following *Miller*, our own high court reaffirmed the age of 18 as the bright line that our society uses to separate childhood from adulthood for many purposes, including the propriety of certain criminal punishments like the death penalty. (*People v.*

9

*Tran* (2022) 13 Cal.5th 1169, 1234 (*Tran*).) Because Powell was already 18 at the time he committed the murders, *Miller* does not apply to him.

Next, Powell argues that imposing a mandatory LWOP sentence on young adults like himself is "too severe" because "it does not allow a sentencing court to consider a young adult's individual circumstances." Once again, Powell urges this court to apply the reasoning in *Miller*, where the high court encouraged consideration of a juvenile offender's individual circumstances before imposing LWOP. (*Miller*, *supra*, 567 U.S. at pp. 476–477.) And once again, we decline to reject the bright line established by the United States Supreme Court in *Roper*, *supra*, 543 U.S. at page 547, and the California Supreme Court in *Tran*, *supra*, 13 Cal.5th at page 1234. As explained in *People v. Argeta* (2012) 210 Cal.App.4th 1478, 1482, "[m]aking an exception for a defendant who committed a crime just five months past his 18th birthday opens the door for the next defendant who is only six months into adulthood. Such arguments would have no logical end, and so a line must be drawn at some point."

Accordingly, we conclude that the imposition of a mandatory LWOP sentence on individuals 18 and older does not constitute cruel or unusual punishment in violation of the California Constitution.[4]

---

[4] Because we are bound by our high court's holding that the most extreme punishment—death—is constitutional for 18-year-olds (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455), we cannot rely on the decisions of other state courts extending the reasoning of *Miller* to young adults to reach a contrary conclusion. Absent a change of opinion by our high court, only the Legislature may extend the right to a parole hearing to young adults sentenced to LWOP.

C. Powell Cannot Assert a Claim Under the Racial Justice Act in this Appeal.

Lastly, Powell argues for the first time on appeal that the imposition of LWOP on African Americans like himself constitutes cruel or unusual punishment "because it is disproportionate under the Racial Justice Act [(RJA)]." We need not reach the merits of this argument because Powell cannot make a RJA claim in this appeal.

The RJA became effective on January 1, 2021. (§ 745, added by Stats. 2020, ch. 317, § 3.5.) It was enacted "to eliminate racial bias from California's criminal justice system" and "to ensure that race plays no role at all in seeking or obtaining convictions or in sentencing." (Stats. 2020, ch. 317, § 2(i).) To this end, the RJA states that "[t]he state shall not seek or obtain a criminal conviction or seek, obtain, or impose a sentence on the basis of race, ethnicity, or national origin." (§ 745, subd. (a).) In its current form, the RJA applies retroactively (§ 745, subd. (j)) and provides that "[a] defendant may file a motion pursuant to this section, or a petition for writ of habeas corpus or a motion under Section 1473.7, in a court of competent jurisdiction, alleging a violation of subdivision (a). For claims based on the trial record, a defendant may raise a claim alleging a violation of subdivision (a) on direct appeal from the conviction or sentence." (§ 745, subd. (b)).

As this is not a direct appeal from a conviction or sentence, Powell cannot raise a RJA claim in this appeal from the denial of a motion under section 1203.01. (See § 745, subd. (b).) Powell is not, however, precluded from raising his RJA claim through any other procedural mechanism allowed under section 745, subdivision (b).

## III.  DISPOSITION

The December 29, 2022, order is affirmed.

11

_____
CHOU, J.

We concur.


_____
JACKSON, P. J.


_____
BURNS, J.


*People v. Powell* / A167066

12

Court of Appeal, First Appellate District, Division Five - No. A167066

**S284418**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

_____

THE PEOPLE, Plaintiff and Respondent,

v.

DIANTAY POWELL, Defendant and Appellant.

_____

The petition for review is denied.

Liu and Evans, JJ., are of the opinion the petition should be granted.

(See Dissenting Statement by Evans, J.)

_____/s/_____
                                        *Chief Justice*

PEOPLE v. POWELL

S284418

Dissenting Statement by Justice Evans

This court recently held that Penal Code section 3051, subdivision (h)'s exclusion of youth offenders sentenced to life without the possibility of parole (LWOP) from the youth offender parole eligibility scheme does not — on its face or as applied to individuals serving LWOP for special circumstance murder — violate equal protection under a rational basis standard. (*People v. Hardin* (2024) 15 Cal.5th 834, 839, 866 (*Hardin*).) Powell's case presents two important issues the court left unaddressed in *Hardin*: first, whether excluding youthful offenders from the youth offender parole eligibility scheme constitutes cruel or unusual punishment under the California Constitution, and second, whether the LWOP exclusion constitutes cruel or unusual punishment by disproportionately impacting young African Americans, like Powell, and other young people of color. (See *id.* at p. 865, fn. 8.) Because Powell has raised serious concerns about the constitutionality of the LWOP exclusion, I would grant review.

When Diantay Powell was 18 years old, he shot and killed 16-year-old Bobbie Sartain and 15-year-old Raquel Gerstel. On November 25, 2012, Powell was under the influence of alcohol and drugs. He and the two victims were passengers in a car, driven by Powell's cousin. At one point, Powell wanted the victims to exit his vehicle so he could pick up his girlfriend. The victims objected to getting out of the car. A verbal argument ensued. Powell forced the victims out of the car, and he

1

ultimately shot them. A jury convicted Powell of various crimes including special circumstance murder, which carries a mandatory term of LWOP.

At sentencing, the trial court had no choice but to condemn Powell to life in prison without the possibility of parole. It could not consider whether LWOP was appropriate and just, in light of mitigating evidence such as Powell's youth, his alcohol and drug use, his experience being a victim of gun violence at 13 years old, and his traumatic experiences in the foster care system. Powell — now 30 years old — cannot ever go before the Board of Parole Hearings to demonstrate that he should be granted youth offender parole based on his youthful attributes at the time of the offense, his present day insight, and his rehabilitation.

The California Constitution prohibits cruel *or* unusual punishment. (Cal. Const., art. I, § 17, italics added.) Our state constitution's prohibition against cruel *or* unusual punishment is distinct from the federal constitution's prohibition against cruel *and* unusual. The distinction "is purposeful and substantive." (*People v. Carmony* (2005) 127 Cal.App.4th 1066, 1085.) We construe our state's constitutional prohibition against cruel or unusual punishment separately from its Eighth Amendment analog. (See also Cal. Const., art. I, § 24 ["Rights guaranteed by this Constitution are not dependent on those guaranteed by the United States Constitution"]; *People v. Buza* (2018) 4 Cal.5th 658, 701–704 (dis. opn. of Liu, J.).)

The state constitutions of Massachusetts, Michigan, and Washington contain a similar prohibition against cruel or unusual punishment. The high courts in each of those states recently held their state constitutions prohibited imposing an

LWOP sentence on youthful offenders who were over 17 years old. (*Commonwealth v. Mattis* (Mass. 2024) 224 N.E.3d 410, 416 (*Mattis*) [holding LWOP for 18 to 20 year olds violates the Massachusetts Constitution's prohibition against "cruel or unusual punishment"]; *People v. Parks* (Mich. 2022) 987 N.W.2d 161, 169 (*Parks*) [holding mandatory LWOP for 18 year olds violates the Michigan Constitution's prohibition against "cruel or unusual punishment"], italics omitted; *In re Pers. Restraint of Monschke* (Wn. 2021) 482 P.3d 276, 279 (*Monschke*) [holding mandatory LWOP for 18 to 21 year olds violates the Washington Constitution's prohibition against " 'cruel punishment' "].) The analysis in each of those cases is compelling.

Stated plainly, "youth matters." (*Mattis, supra*, 224 N.E.3d at p. 415.) As neuroscience shows and "any parent knows," juveniles and younger adults lack maturity and a sense of responsibility, they are vulnerable to negative influences over which they have limited control, and their character is transitory and developing. (*Roper v. Simmons* (2005) 543 U.S. 551, 569; see *id.* at pp. 569–570 [discussion of three differences between offenders under 18 and adult offenders].) "Neuroscientists now know that all three of the 'general differences between juveniles under 18 and adults' recognized by *Roper* are present in people older than 18." (*Monschke, supra*, 482 P.3d at p. 286; accord, *Mattis, supra,* at p. 421 ["the scientific record strongly supports the contention that emerging adults have the same core neurological characteristics as juveniles have"].) Legislatures, including ours in California, have "determined that emerging adults require different treatment from older adults, specifically in the penological context." (*Mattis, supra*, at p. 424; see Welf. & Inst. Code, § 607 [juvenile court retains jurisdiction until the person is 21, 23, or

25 years old]; see also Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1308 (2017–2018 Reg. Sess.) as amended Mar. 30, 2017, pp. 4–5 [Legislature's "rationale [in enacting and twice expanding section 3051] is that research shows that cognitive brain development continues into the early 20s or later"]; *Hardin*, *supra*, 15 Cal.5th at pp. 880–881 (dis. opn. of Liu, J.).) Various states, including California, Illinois, Colorado, and Wyoming, "recogniz[e] that emerging adult offenders require different treatment from older adult offenders." (*Mattis*, *supra*, at p. 425 [citing Pen. Code, § 3051].) These laws, including California law, "distinguish[ ] emerging adults from older adults on a range of issues, granting rights and imposing responsibilities in a graduated manner" that "reflect[s] the commonly held view that emerging adults generally are not equipped to assume all the responsibilities of adulthood, especially with respect to high risk activities." (*Mattis*, *supra*, at p. 426.)

Additionally, a significant number of states (22) and the District of Columbia "do not mandate [LWOP] in any circumstance." (*Id.* at p. 426; see *id.* at pp. 426–427.) Some other countries have similar laws. The United Kingdom prohibits LWOP for any person who was under 22 years of age at the time they committed the offense, and the Supreme Court of Canada has held that LWOP is unconstitutional for all convicted persons. (*Id.* at p. 428.) Lastly, the fate of being imprisoned without hope of release is "particularly acute for young persons . . . , because they will inevitably serve more time and spend a greater percentage of their lives behind prison walls." (*Parks*, *supra*, 987 N.W.2d at p. 178.) In addition to more time spent behind bars, the conditions of confinement for youth can be particularly brutal and inhumane. (See Human

Rights Watch, When I Die, They'll Send Me Home: Youth Sentenced to Life Without Parole in California (Jan. 2008) Vol. 20, No. 1 (G) pp. 54–55 <http://www.hrw.org/reports/2008/us0108/us0108web.pdf> [as of June 12, 2024].) Largely due to these considerations, other high courts have held sentencing emerging adults to LWOP is unconstitutional.

Powell also asserts that the LWOP exclusion is cruel or unusual by disproportionately impacting young African Americans and other young people of color. Indeed, "[t]he LWOP exclusion perpetuates extreme racial disparities in our criminal and juvenile justice systems." (*Hardin, supra*, 15 Cal.5th at p. 907 (dis. opn. of Evans, J.); see also *id.* at p. 887 (dis. opn. of Liu, J.).) Below, the Court of Appeal declined to consider Powell's claim that his mandatory LWOP sentence violates our state constitution's prohibition against cruel or unusual punishment under the California Racial Justice Act of 2020 (RJA) (Stats. 2020, ch. 317), on the grounds Powell was appealing the denial of his *Franklin* motion (*People v. Franklin* (2016) 63 Cal.4th 261) rather than his conviction or sentence. It noted, "Powell is not, however, precluded from raising his RJA claim through any other procedural mechanism allowed under section 745, subdivision (b)." (*People v. Powell* (Feb. 23, 2024, A167066) [nonpub. opn.].)

I agree that Powell may file a petition for writ of habeas corpus asserting any RJA claims. However, I would consider Powell's argument that the disproportionate application of the LWOP exclusion on youth of color violates our state constitution's prohibition against cruel or unusual punishment. In enacting the RJA, our Legislature made clear that statistical evidence demonstrating disparate racial impact informs whether depriving Powell of a meaningful opportunity of release

constitutes cruel or unusual punishment under the California Constitution. (*Mosby v. Superior Court* (2024) 99 Cal.App.5th 106, 123 [the RJA "was enacted, in part, to address *McCleskey v. Kemp* (1987) 481 U.S. 279, 295–299, 312, which found that there was 'a discrepancy that appears to correlate with race' in death penalty cases in Georgia, but the court would not intervene without proof of a discriminatory purpose" when considering an Eighth Amendment challenge]; see Stats. 2020, ch. 317, § 2, subd. (f).) In other words, statistical evidence showing the imposition of mandatory LWOP sentences on emerging adults disparately impacts youth of color may demonstrate the sentence is arbitrary and capricious and thus "cruel or unusual," in violation of our state constitution.

Now is the time for our court to grapple with these important considerations and determine whether our constitution, too, prohibits condemning an 18-year-old to die in prison without any individualized consideration. With today's denial of review, this court's promise in *Hardin* of due consideration another day remains unfulfilled. (See *Hardin, supra*, 15 Cal.5th at p. 907 (dis. opn. of Evans, J.).) To the extent further development of the record would assist us, a remand for factual development in the trial court would be the prudent course. (See *id.* at pp. 892–893 (dis. opn. of Liu, J.); see also *Mattis*, *supra*, 224 N.E.3d at p. 416.) Since this court has deferred consideration of these issues, I continue to "urge the Legislature to correct itself by ridding [Penal Code] section 3051 of the LWOP exclusion and extending youth offender parole

eligibility to all individuals who were convicted in their youth." (*Hardin*, at p. 907 (dis. opn. of Evans, J.).)

**EVANS, J.**

**I Concur:**

**LIU, J.**